Clifford L. LIONBERGER, d.b.a. Lionberger's Auto Parts

v.

The UNITED STATES.

No. 249–59.

United States Court of Claims.

Jan. 20, 1967.

As Amended on Denial of Rehearing April 14, 1967.

William T. Stephens, Washington, D. C., attorney of record, for plaintiff. Grant R. Sykes, Washington, D. C., of counsel.

Saylor L. Levitz, Washington, D. C., with whom was Asst. Atty. Gen. Mitchell Rogovin, for defendant. Lyle M. Turner and Philip R. Miller, Washington, D. C., of counsel.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON, and NICHOLS, Judges.

## OPINION

PER CURIAM:

This case was referred to Trial Commissioner C. Murray Bernhardt, with directions to make findings of fact and recommendation for conclusions of law.

The commissioner has done so in an opinion and report filed on April 14, 1966. Exceptions to the commissioner's opinion and report were filed by plaintiff. The parties have filed briefs and the case has been argued orally. Since the court is in agreement with the opinion, findings and recommendation of the trial commissioner, with modifications, it hereby adopts the same, as modified, as the basis for its judgment in this case as hereinafter set forth. Plaintiff is, therefore, not entitled to recover and the petition is dismissed except as to plaintiff's claim for entitlement to a credit for excise tax paid on tires and tubes used on trailers which he manufactured and leased, so as to avoid double excise taxation of tires and tubes. Defendant has conceded that plaintiff is entitled to a credit under this latter claim and, therefore, as to it judgment is entered for plaintiff with the case remanded to the commissioner for further proceedings to determine the amount thereof pursuant to Rule 47(c).

Commissioner Bernhardt's opinion,[1] as modified by the court, is as follows:

This is an action to recover $16,790.02 alleged to have been erroneously collected as manufacturer's excise taxes for the period from January 1, 1951 to June 30, 1954 under § 3440 of the Internal Revenue Code of 1939. Despite strong equities in his favor, the plaintiff is not legally entitled to recover.

The plaintiff is a sole proprietor engaged in the business of selling auto parts and accessories and the manufacture and leasing of automobile utility trailers. The questions presented here are concerned solely with plaintiff's leasing activities in the utility trailer business.

During the period in question taxpayer was a member of Nationwide Trailer Rental System (hereinafter referred to as Nationwide). This organization, a non-profit, voluntary association of rental operators, incorporated originally under the laws of Michigan has, as its principal function, the administration and regulation of a trailer rental system in behalf of its participants. Viewed from plaintiff's standpoint, the mechanics of the Nationwide trailer leasing system operated as follows:

Following the manufacture of an automobile trailer, plaintiff would make it available for leasing to customers, such leases being either for local use, or what shall be here referred to as a one-way rental. By means of such one-way rentals, a customer could rent a trailer at taxpayer's business situs, use it to transport goods to his point of destination, and there deliver the trailer to another member of the Nationwide organization. The receiving member designated a rental station or rental operator, would again rent the trailer to a one-way customer who, in his turn, would agree to leave it with a Nationwide rental station at the next destination. In this manner, plaintiff's trailers moved from one rental operator to another. The system was reciprocal in that plaintiff also rented trailers belonging to other members of Nationwide.

Uniformity in operation and administrative control was achieved through a system of self-imposed rules implemented by Nationwide itself. A uniform lease agreement was used. Division of the rental fee was specifically provided for in the association's bylaws. In the case of one-way rentals plaintiff received 52½ percent of the rental, and in the case of local rentals he received 60 percent. Any trailer rented into the system by its owner remained the property of the owner. Hence, with respect to plaintiff's trailers, he held the title, he licensed them, he insured them, he carried the risk of loss, and he authorized major repairs whenever necessary. In short, the members of Nationwide held a common business purpose, but not a common property. Each participating unit remained a distinct business entity whose membership in Na-

---

[1]. The opinion, findings of fact, and recommended conclusion of law are submitted under the order of reference and Rule 57(a).

tionwide was conditioned upon compliance with the applicable rules and regulations.

In 1952, following an examination of taxpayer's income tax return, the Internal Revenue Service (hereafter IRS) discovered that plaintiff had failed to file manufacturer's excise tax returns. On request, delinquent returns were filed in 1954. In his returns the taxpayer computed his excise tax liability for those trailers which he manufactured and sold, against the sale price, but as to those trailers which he manufactured and leased, he measured his excise tax liability on the basis of the amount received for the first lease of each trailer.

Disagreeing with taxpayer's method of computation respecting the tax due from his leasing operation, IRS took the position that the tax should be based on the gross amount received from each successive lease of a trailer, whether local or one-way. Under this approach, the excise tax would extend not only to every lease, but would also include that portion of each rental fee, whether local or one-way, which the renting agent retained as his "commission". In accordance with its indicated position, IRS assessed a deficiency against plaintiff, who thereafter paid the tax and brought suit here following the denial of his refund claim.

Under the provisions of Chapter 29, subtitle C, of the Internal Revenue Code of 1939, § 3403, 53 Stat. 410, Congress provided for the imposition of a 10 percent excise tax to be levied, among other things, upon the sale by a manufacturer of a trailer suitable for use in connection with passenger automobiles. And by virtue of § 3440 of this Chapter (as amended by § 553(a), Internal Revenue Act 1941, 55 Stat. 720), the term "sale" was to include "the lease of an article (including any renewal or any extension of a lease or any subsequent lease of such article) by the manufacturer * * *."

These two provisions, i. e., § 3403 which imposes the tax upon a sale and § 3440 which extends the tax to a lease, form the nucleus of the Government's position. In essence, the Government urges a literal application of the statutes. By contrast, taxpayer's fundamental theme is that § 3440 is ambiguous and that the Service's interpretation of this section violates the concept of uniform taxation which Congress had supposedly set up in the manufacturer's excise tax provisions of Chapter 29. Thus, the question at this point is whether taxpayer's trailer rentals constituted "leases" within the meaning of § 3440.

■ It is, of course, a familiar principle of law that in the construction of a statute the words thereof are to be given their ordinary and familiar meaning. Yet, plaintiff contends that the term "lease" as used in § 3440 was meant by Congress to cover only those leases which one could deem the essential equivalent of a sale. He claims support for this position in the legislative history of the lease provision and in the general taxing scheme set forth in Chapter 29.

■ Despite the fact that the meaning of § 3440 seems clear and unambiguous on its face, that fact alone would not preclude a review of its legislative history, where such review would aid in ascertaining Congressional intent. For, as the Supreme Court has observed "[w]hen aid to construction of the meaning of words, as used in the statute, is available, there certainly can be no 'rule of law' which forbids its use, however clear the words may appear on 'superficial examination'." United States v. American Trucking Ass'ns, 310 U.S. 534, 543, 60 S.Ct. 1059, 1064, 84 L.Ed. 1345 (1940). However, a review of the legislative history of this section fails to provide conclusive support for taxpayer's assertion.

Section 3440 was originally enacted as § 618 of the Revenue Act of 1932, 47 Stat. 267, and it provided simply that "[f]or the purpose of this title, the lease of an article shall be considered the sale of such article". The only explanation which might conceivably offer some support for plaintiff's argument appears in S.Rep.No.665, 72d Cong., 1st Sess., p. 44

(1939—1 Cum.Bull. (Part 2), 496, 528), which states: [2]

> Section 616 [section 618] of the House bill, retained as section 605, provides that the lease of an article shall be considered the sale of an article, so that the tax cannot be evaded by a lease contract which does not involve passage of title.

However, one would be hard-pressed to derive from this language any proof for the argument which plaintiff now makes, namely, that Congress meant to tax only those leases which were the equivalent of sales. And subsequent legislative history is similarly wanting.

Section 618 was incorporated, without change, into the Revenue Code of 1939 as § 3440. A more comprehensive definition of the "lease" provision resulted from the amendment of § 3440 by the Revenue Act of 1941 ch. 412, § 553(a), 55 Stat. 720. As a result of the amendment, the section read as follows:

> SEC. 3440. DEFINITION OF SALE
>
> For the purposes of this chapter the lease of an article (*including any renewal or any extension of a lease or any subsequent lease of such article*) *by the manufacturer, producer, or importer* shall be considered a taxable sale of such article. (Emphasis indicates words which were added.)

The explanation for this change, which appears in S.Rep.No.673, Part 1, 77th Cong., 1st Sess., p. 54 (1941–2 Cum.Bull. (Part 2), 466, 507), states only that this amendment was considered a "clarification of existing language" and embraced those "articles subject to manufacturers'

sales tax * * * which are generally leased by the manufacturer and not sold."

From this it is readily apparent that the legislative history of § 3440 offers little by way of constructive aid in support of plaintiff's position. It is impossible to glean from it a meaning for the word "lease" which is in any sense different from that which appears in the statute itself. A similar conclusion was reached in the case of McClintock v. Westover, 167 F.2d 601 (9th Cir. 1948), where the court observed at 604:

> * * * The Act says "lease" and no limitations are provided. * * * We do not construe § 3440 as meaning that an excise tax accrues whether the article is sold or leased by an instrument which provides that title shall pass when the rent reserved is paid. The appellants mistakenly conclude that since title would never pass under the so-called rental agreement, it was not such a lease as would be within the purview of § 3440.

By way of additional proof on this point the subsequent history of § 3440 becomes instructive. The section, in its amended form, was incorporated into the Internal Revenue Code of 1954 as § 4217. Thereafter, and in response to the very issue now under litigation, Congress, through Public Law 317, ch. 677, 69 Stat. 613, limited the total tax assessable under § 4217. The gist of this amendment, which became effective on September 1, 1955, was to limit the excise tax ordinarily collectible from the leasing of automobile trailers to an amount not to exceed the applicable tax rate multiplied by the fair market value at time of first lease.

---

2. Taxpayer also cites S.Rep. No. 398, 68th Cong., 1st Sess., p. 41 (1939–1 Cum.Bull. (Part 2), 266, 294), as legislative authority in support of his position that Congress intended to tax as sales only those leases which were the economic equivalent of sales. This report which refers to Section 604 of the Revenue Act of 1925, imposing a tax upon the sale or lease of jewelry stated:

> Since dealers frequently dispose of goods under a form of contract termed a "lease", which in reality is a contract for a sale with payment by install-

ments, it has been expressly provided that the tax herein levied applies to such transactions.

Though taxpayer's reliance upon this is justifiable, its value here is appreciably diminished not only because it relates to an earlier revenue act dealing with a different subject matter, i. e., jewelry sales, but because the explanation of Section 3440, quoted above, which is controlling here, does not contain any language requiring a lease to be the economic equivalent of a sale before it may be taxed as such.

Equally as significant is the fact that this remedial legislation specifically precluded any retroactive application. That is, the maximum tax which could now be collected, although limited by the fair market value of a trailer, would be computed without credit being given for excise taxes previously paid.

■ The conclusion which must be drawn from this is that the excise tax laws prior to the 1955 amendment (P.L. 317, supra) contemplated no distinction between leases which were the substantial equivalent of sales and those which were not. Congress in response to a discriminatory situation passed legislation to overcome the harsh effects resulting from the literal application of § 3440, but at the same time precluded any retroactive application. The legislative history is clear that, when that amendatory statute was passed, all interested parties considered the then-existing law to be as defendant now says it was. H.Rep.No.1290, 84th Cong., 1st Sess., pp. 2–3 (1955–2 Cum.Bull. 847, 847–848) ; 101 Cong.Rec. 11149. See, also, 2 House Hearings on Excise Tax Technical and Administrative Problems (1956), pp. 57–58 (testimony of Dan T. Smith, Special Assistant to the Secretary of the Treasury) ; p. 357 (statement of Sigurd Trannal, Tax Manager, Stromberg-Carlson Division of General Dynamics Corporation) ; pp. 422–423 (statement of Arthur D. Condon, on behalf of the Independent Advisory Committee to the Trucking Industry) ; pp. 600–601 (statement of Cravath, Swaine & Moore for International Business Machines Corporation) ; House Hearings on Excise Taxes (1956), pp. 865–877 (testimony and statement of Daniel M. Gribbon, of the law firm of Covington & Burling, representing the International Business Machines Corporation) ; 103 Cong.Rec. 9841; 104 Cong. Rec. 16850; S.Rep.No.2090, 85th Cong., 2nd Sess., pp. 26–27, U.S.Code Congressional and Administrative News, p. 4395 (1958–3 Cum.Bull. 584, 609–610).

As to the narrower question here, whether the trailer rentals were actually leases *per se,* there can be no dispute.

The transaction between a renting station and the renting customer gave to the latter the right to hold and to use the hired chattel during the time and for the price stipulated in the contract of hiring, subject only to the condition that due care be exercised during its use. The arrangement is, therefore, within the accepted meaning of a lease—defined in Treasury Regulation 46 (1940 ed., as amended) as—

> \* \* \* a continuous right to the possession or use of a particular article for a period of time. It does not include the use of an article merely as occasion demands, but the contract must give the lessee the right to possess or use the article, without interruption, for a period of time.

Having concluded (a) that the excise tax statute in question, i. e., § 3440, embraced all leases, whether the equivalent of a sale or otherwise, and (b) that plaintiff's trailer rentals were leases within the accepted meaning of that term, it must follow from this that the excise tax statutes, as applied to taxpayer in this case, do fully support the result for which the Government now contends.

■ Moreover, since the statute itself clearly states that "any renewal or any extension of a lease or any subsequent lease" shall constitute a taxable sale, it clearly supports the view that each trailer rental constituted a separate taxable event. Taxpayer argues that these terms —renewal, extension, subsequent lease —create separate taxable situations only where they run to the same lessee, on the theory that the extension imparts to the transaction the qualities of a true sale, hence making the use of a lease device a sale avoidance mechanism. He contends that, in the more usual situation of numerous leases to different leases, only the first lease, like the first sale, constitutes the single taxable event.

The quite obvious difficulty with the construction is that it totally ignores the phrase "or any subsequent lease", and imparts to the statute a qualification which the statute itself does not contain. As noted, supra, Congress in its use of

the term "lease" did not limit it to those transactions which were the substantial eqivalent of sales, and thus one can perceive no basis for now accepting such a distinction. The statute speaks in terms of a lease, a renewal, an extension or a subsequent lease, each to be treated as a taxable situation.

■ That the result is harsh and perhaps quite unintended is a fact of which one becomes keenly aware, but the power to supply an omission, or to render a result which the statute precludes, are powers which do not lie within the judicial province. Taxation is at best a most imperfect science, and as observed elsewhere "in taxation it is often true that, not only in the beginning but at the ending, is the Word". Ungar v. Commissioner of Internal Revenue, 244 F.2d 90, 94 (2d Cir. 1957).

■■ Little need be said with respect to the plaintiff's contention that this scheme of taxation, which equates a lease with a sale and subjects both to the same tax rate, amounts to an unconstitutional exercise because of the resulting disparity in the tax burden. None would dispute that a taxing measure may indeed be found unconstitutional, but as Judge Learned Hand observed, the "mere inequality of incidence has never been held enough." Neuss, Hesslein & Co. v. Edwards, 30 F.2d 620, 621 (2d Cir. 1929), cert. denied, 279 U.S. 872, 49 S.Ct. 513, 73 L.Ed. 1008. Unconstitutionality derives neither from unequal imposition nor from unequal incidence, but rather from that special instance where the act is "so arbitrary as to compel the conclusion that it does not involve an exertion of the taxing power, but constitutes, in substance and effect, the direct exertion of a different and forbidden power, as, for example, the confiscation of property. Magnano Co. v. Hamilton, 292 U.S. 40, 44, 54 S.Ct. 599, 601, 78 L.Ed. 1109 (1934).

The excise tax imposed against plaintiff's trailer leases amounted to 10 percent of the rental fee and this, in itself, could not be considered a confiscatory excise. And, further, the equation of a lease to a sale, for purposes of applying the manufacturer's excise tax, must be sustained as a reasonable system of classification in light of the nature of the tax and the taxable incident to which it was meant to apply.

In his skillful attempt to avoid the harsh results of the case, taxpayer invokes the further argument that the leasing of his trailers constituted a "use" of these trailers within the meaning of § 3444 of Chapter 29, and that his tax should have been computed under this section rather than under § 3440.

Section 3444 provides: .

USE BY MANUFACTURER, PRODUCER, OR IMPORTER.

(a) If—

(1) any person manufactures * * * an article * * * and uses it (otherwise than as material in the manufacture or production of, or as a component part of, another article to be manufactured or produced by him which will be taxable under this chapter * * *);

(2) * * * he shall be liable for tax under this chapter in the same manner as if such article was sold by him, and the tax (if based on the price for which the article is sold) shall be computed on the price at which such or similar articles are sold, in the ordinary course of trade, by manufacturers * * * as determined by the Commissioner.

■ It is plaintiff's contention that the lease of an article for a term roughly corresponding to that article's useful life would be a lease of the type contemplated by § 3440, whereas short-term leases, such as one-way trailer rentals, would constitute a "use", to which § 3444 would apply. This argument is without merit. There is no statutory basis for such a distinction; the legislative history of § 3440 does not support it, and case law has rejected it. See McClintock v. Westover, supra.

While it is true that every manufacturer uses his product in the sense that it becomes a means of profit for him, the point to be recognized here is that tax-

payer's use was obtained through the mechanics of a lease and this form of use Congress has specifically decreed to be taxable as a sale. Thus, the use contemplated by § 3444 is one which does not include a sale, lease, or other means of disposition, but rather one in which both title and beneficial ownership remain with the manufacturer. In the case of a lease, beneficial ownership rests for the term of the lease, in the lessee. It is this diversion in the incidents of ownership which gives rise to a taxable transfer, and precludes taxation under the "use" statute.

Next for consideration is the question as to whether the Internal Revenue Service was correct in computing the excise tax upon the total lease price rather than upon the $52\frac{1}{2}$ percent portion of the rentals which the plaintiff received under the standard rental agreement.

Much of the argument on this issue has been directed towards defining the nature of the legal relationship existing among the members of Nationwide Trailer Rental Service. It is the Government's position that this relationship should be regarded as that of principal and agent, or, alternatively, as a principal-agent-subagent relationship with Nationwide being taxpayer's agent and the rental stations subagents. On the basis of such a characterization, plaintiff's excise tax liability would be measured in terms of the total lease price; that part of each rental fee retained by the renting station would represent a commission and, as such, could not be excluded from the tax base.

However, plaintiff submits that his relationship vis-a-vis Nationwide and its participating members, cannot be classified in terms of agency or subagency. He denies the existence of that degree of control which agency, by definition, reposes in a principal. It is plaintiff's contention that the rental operators are bailees, and that in this capacity, their rights, duties, and obligations are governed solely by rental instructions issued by Nationwide itself, with each member remaining an independent entity functioning in its own behalf.

The essential criteria determining the existence of an agency relationship, as set forth in the Restatement of the Law of Agency, §§ 12–14, include the following:

§ 12. AGENT AS HOLDER OF A POWER.

An agent or apparent agent holds a power to alter the legal relations between the principal and third persons and between the principal and himself.

§ 13. AGENT AS A FIDUCIARY.

An agent is a fiduciary with respect to matters within the scope of his agency.

§ 14. CONTROL BY PRINCIPAL.

A principal has the right to control the conduct of the agent with respect to matters entrusted to him.

Upon the application of these elements to the facts in this case, one is led to the inescapable conclusion that Nationwide's method of operation was one of mutual agency; hence those who leased plaintiff's trailers to the ultimate users, did so in his behalf and as his agent. The power of the rental operators to contractually bind the plaintiff, their fiduciary obligation to him, and the control which plaintiff maintained over the rental operation permit no other conclusion.

Proceeding to the facts, it should be noted at the outset that the rental station operators held no separate property interest in the trailers which were in their custody; full title remained at all times with the plaintiff, and those who leased in his behalf had no power to deal with the trailers in any manner inconsistent with plaintiff's ownership. Furthermore, the risk of loss remained at all times upon plaintiff, and all major repair work required his specific authorization. And although by no means dispositive of the matter in question, it should be pointed out that the percentage of the rental fee retained by the renting unit was referred to as a "commission". Additional prima-facie evidence derives from the fact that in the uniform leasing agreement used by Nationwide dealers, plaintiff's interest therein was almost invariably referred to as owner and lessor, with the rental station's designation list-

ed as agent. Each lease included a provision permitting the lessor to repossess the trailer in the event the renting customer failed to take adequate care of it. Finally, as to the all important question of control, the evidence reveals that, in the leasing function, the rental operator's managerial discretion was clearly limited by general instructions issued by Nationwide, which instructions were binding upon him by virtue of his membership in that organization.

Pursuant to these instructions a rental operator was prohibited from (a) leasing into the one-way system any trailer not belonging to a Nationwide member, (b) using a Nationwide trailer for local rental purposes, (c) forwarding a trailer to any station save that of another member, and (d) leasing trailers in an order other than that in which received. These instructions also required the rental operator to (a) immediately forward the owner's 52½ percent secured from each rental, (b) secure a deposit in advance for each trailer rental, and (c) perform routine maintenance and do minor repair work for which the owner was to be billed at wholesale. Uniform administrative practices were set up which enabled an owner to know at all times where his equipment was stationed, and a uniform lease agreement was used. The sole area of discretion permitted the rental operator was in the rate which he could charge for a rental. Although Nationwide did publish a suggested rate schedule, adherence to this was not mandatory in light of varying sectional differences as to demand and competition. In all other respects, however, uniformity of operation and control was preserved.

Recognizing the significance of control as the vitally essential element in an agency relationship, plaintiff would seek to avoid such a finding upon the facts in this case by pointing out that it was Nationwide itself, rather than plaintiff, which provided the managerial direction. Thus, argues plaintiff, the members of Nationwide were simply independent cooperating entities, each deriving a profit from a common business.

This argument would have merit if Nationwide functioned as an integrated business, incorporating under one head the trailer businesses conducted by its members. Under such circumstances Nationwide would represent a separate, taxable entity, and each participating member a shareholder. But that is not the case here. The Nationwide Trailer Rental System, though designated a corporation (actually a nonprofit corporation) is in reality nothing more than a voluntary association of individuals having a common business purpose, and as such, the rules of agency would clearly have application. Nationwide, in its corporate state, manifested a business purpose, but was not, in itself, a business. Its bylaws, and the authority which flowed therefrom, were but the joint expression of a joint purpose, and cannot be regarded in any sense different from those agreements which its members could have made by and for themselves. Similar observations were made by the district court (United States v. Nationwide Trailer Rental System, Inc., 156 F.Supp. 800, 805 (D.C.Kan.1957), aff'd per curiam, 355 U.S. 10, 78 S.Ct. 11, 2 L.Ed.2d 20), which characterized Nationwide in the following terms:

> The defendant NTRS is not an integration of the business of its members. It is not a sole marketing or selling agency through which its members operate. It is rather an organization for the "mutual benefit, comfort, and instruction" of its members.

And in regard to the rental instructions from which plaintiff's control derived, the district court noted the following:

> By virtue of the by-laws, rental instructions issued by the Board of Directors and the Executive Committee *are also agreements between the members.* (Emphasis added.)

Given this fact, it is difficult to see how the control which plaintiff derived through the medium of Nationwide could in any sense be regarded as different from that which he could have asserted personally. The intercession of a bare

**840**

legal entity, having no distinct tax status, and in all respects subordinate to the will of its members, represents a factor without legal consequence. While it is true that plaintiff's power to control was restricted because changes in the bylaws were made subject to the membership's majority approval, nevertheless, such a diminution of personal power is not, in itself, contrary to the concept of mutual agency.

Plaintiff's business relationship with the other members of the Nationwide organization meets all the requirements of an agency relation, and must be so regarded. Title, ownership, control, risk of loss—all of these elements remained with the plaintiff, and he must, therefore, be regarded as the actual lessor.

Plaintiff advances several additional arguments, but these would not negate the conclusion which has been reached here. Thus, the circumstance that the rental operators also conducted a regular business, with the leasing business, in most cases, being simply a "sideline", would not destroy, in any way, their incidental function as agents. As to the argument that the rental fee which a leasing station retained represented an amount far exceeding what might realistically be regarded as an agent's commission, thus refuting the existence of an agency, suffice it to say that the agency relationship, being consensual in nature, may allow whatever measure of consideration the parties deem adequate. As previously pointed out, the rental operators held no separate property interest in plaintiff's trailers, and thus the division of the rental price was simply a division, which on the one hand recognized the factor of plaintiff's ownership, and on the other, the services of a renting agent.

Further, the plaintiff argues that his trailers, while in the possession of Nationwide operators, were actually bailed chattels, thereby making those who held them bailees, or, in plaintiff's terminology, "secondary bailors". In this contention plaintiff would appear to be correct.

A bailment relationship is said to arise where an owner, while retaining title, delivers personalty to another for some particular purpose upon an express or implied contract. The relationship includes a return of the goods to the owner or a subsequent disposition in accordance with his instructions. However, one cannot agree with the conclusion which plaintiff would base upon the characterization, namely, that a bailment relationship, on the facts of this case, precludes the finding of an agency relationship as well.

That the two concepts—bailment and agency—are not mutually exclusive concepts, is, of course, well recognized. Indeed, plaintiff does not dispute this. One may be both a bailee and an agent with respect to the personal property of another, so long as the purposes of the bailment are not antagonistic to those of the agency. And the question of whether such a duality of roles is in fact present turns principally upon what has heretofore been described as the right of the bailor and/or principal to direct the performance of his bailee in attaining the purposes of the bailment. Where the one who acts in another's behalf is not at the same time also subject to his control, then the relationship, though otherwise a bailment, is not also an agency. But the extent to which the plaintiff did in fact control the manner of performance, i. e., the leasing function, has already been pointed out, and on the basis of those enumerated elements, it was concluded that the rental operators, while leasing plaintiff's trailers, were at that point his agents. Contrary to the plaintiff's contention, the obligations imposed upon the operators extended well beyond the mere duty to maintain plaintiff's trailers in proper mechanical condition. The limitations to which they were subject by virtue of Nationwide's general instructions comprehended virtually every aspect of the leasing operation; they could hardly be considered "independent" functionaries.

Two final questions remain for consideration. The first of these relates

to plaintiff's claimed entitlement to an excise tax credit under the provisions of § 3443. This section provides:

CREDITS AND REFUNDS.

(a) A credit against tax under this chapter, or a refund, may be allowed or made—

(1) * * *.

(2) to any person who has paid tax under the chapter with respect to an article, when the price on which the tax was based is readjusted by reason of * * * a * * * rebate or allowance; in the amount of that part of the tax proportionate to the part of the price which is refunded or credited.

Plaintiff contends that the contractual division of a trailer rental fee which permitted the renting agent to retain, as his share, 47½ percent of the rental, constituted an allowance or rebate to that operator within the meaning of § 3443, and, therefore, the proper excise tax base should exclude this 47½ percent figure. Support for this interpretation is allegedly derived from the Supreme Court's definition of rebate as "[a] special allowance to a forwarder as an inducement to ship goods by a particular carrier". United States v. Chicago Heights Trucking Co., 310 U.S. 344, 353, 60 S.Ct. 931, 936, 84 L.Ed. 1243 (1940). By a parity of reasoning, plaintiff concludes that a rebate within the meaning of § 3443 would represent "an allowance of a portion of a rental fee to another firm to rent the taxpayer's trailers."

Whatever merit the analogy might otherwise hold, it cannot overcome the quite obvious fact that the existence of a principal-agent relationship would, by definition, preclude the application of § 3443 to any transfer between the principal and his agent. The plaintiff has neither leased, nor sold, nor rented his trailers to those who lease them in his behalf. Thus there exists no "price" to which a "rebate" or "allowance" could attach. Section 3443 can have meaningful application only in the context where the plaintiff, as owner, could be deemed to have effected a sale or such other

form of transfer as would, in itself, be the subject of excise taxation. The simple transfer of possession from plaintiff to rental operator which formed the basis of Nationwide's method of operation was not, and could not, be deemed a taxable transfer under the manufacturer's excise tax provisions. The taxable incident ensued only when the transfer of possession was effected via a lease, that is, a transfer to the ultimate user, and it is strictly to this latter transfer to which § 3443 bears relevance.

By way of final argument, plaintiff contends that the proper excise tax base to be recognized here should, by virtue of § 3441, provide for the exclusion of certain expenses which enter into the computation of the price which a customer pays upon renting a trailer.

Section 3441 reads as follows:

SEC. 3441. SALE PRICE.

(a) In determining, for the purposes of this chapter, the price for which an article is sold, * * * [a] transportation, delivery, insurance, installation, or other charge * * * shall be excluded from the price only if the amount thereof is established to the satisfaction of the Commissioner, in accordance with the regulations.

The statute, which was the subject of review by the Supreme Court in Fitch Co. v. United States, 323 U.S. 582, 655 S.Ct. 409, 89 L.Ed. 472 (1945), was there deemed to have, as its purpose, the exclusion from the "sale price", of those charges not related to the cost of manufacturing nor occurring prior to actual shipments, nor otherwise reflected in the f. o. b. price. Thus, as the Court observed, this exclusion would encompass those "additional charges which a purchaser would not be required to pay if he accepted delivery of the article at the factory or place of production * * *." Ibid, at 584, 65 S.Ct. at 411.

The statute refers to transportation, delivery, insurance, installation and other charges. Moreover, the term "other charges", as construed in Fitch, was specifically limited to mean those charges

which were essentially similar to the enumerated charges. Yet the charges which plaintiff seeks to exclude, such as "hitching the trailers, connecting tail lights, inspection, minor repair, washing, wheel greasing * * * tire care and replacement" are clearly without the intended scope of those items for which an exclusion would be permitted. Plaintiff's claimed exclusions bear little resemblance to those charges contemplated in the statute. Clearly they were not additional charges but rather part of the lease price itself.

For these reasons there is no basis for sustaining the plaintiff's contentions and his petition must be dismissed except as to plaintiff's claim for entitlement to a credit for excise tax paid on tires and tubes used on trailers which he manufactured and leased, so as to avoid double excise taxation of tires and tubes. Defendant has conceded that plaintiff is entitled to a credit under this latter claim and, therefore, as to it judgment is entered for plaintiff with the case remanded to the commissioner for further proceedings to determine the amount thereof pursuant to Rule 47(c).