**Ralph HUSBAND, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 09–74C.

United States Court of Federal Claims.

Oct. 30, 2009.

31

Ralph Husband, Plaintiff, pro se.

James P. Connor, United States Department of Justice, Civil Division, Washington, D.C., for Defendant.

## MEMORANDUM OPINION AND FINAL ORDER

BRADEN, Judge.

## I. RELEVANT FACTUAL BACKGROUND.[1]

On February 17, 2005, Plaintiff was taken into federal custody by the United States Marshals Service in Leitchfield, Kentucky. Compl. ¶ 1. On May 26, 2006, Deputy United States Marshal's Jennifer Fitzgerald and Chuck Gilbert ("Individual Defendants") allegedly seized a "man's ring [from Plaintiff] with a value of $4,500." *Id.* at ¶ 2; *see also* Pl. Ex. A. The Individual Defendants promised to return the ring after Plaintiff's trial and sentencing. Compl. ¶ 2.

On September 6, 2007, Plaintiff was transferred into the custody of the Kentucky Department of Corrections to complete a prior state-imposed prison sentence, when he allegedly was advised that the Individual Defendants were searching for the ring and would return it when his sentence with the Commonwealth of Kentucky was completed. *Id.*

On December 17, 2007, after completing the state-imposed prison sentence, Plaintiff was returned to the federal detention center in Leitchfield, Kentucky. *Id.* At the time of this transfer back into federal custody, Plaintiff again demanded the return of the ring. *Id.* He was advised that the ring was lost or misplaced. *Id.*

On January 14, 2008, Plaintiff was transferred to the Federal Corrections Complex in Terre Haute, Indiana, where he is completing the remainder of a federal sentence. Compl. ¶ 2; *see also* Pl. Ex. B. On October 5, 2008, Plaintiff filed a handwritten claim against the Individual Defendants and the United States Marshals Service, but "defendants [have] refuse[d] to reimburse [P]laintiff for the ring's value." Pl. Ex. B; *see also* Compl. ¶ 3.

1. The facts recited herein were derived from the February 6, 2009 Complaint ("Compl.") and

## II. PROCEDURAL HISTORY.

On February 6, 2009, Plaintiff filed a *pro se* Complaint in the United States Court of Federal Claims against the Individual Defendants in their official capacity and the United States Marshals Office (collectively hereinafter "the Government"), demanding payment of $4,500 for the ring that allegedly was seized and subsequently lost or misplaced while Plaintiff was in custody. Compl. ¶¶ 2–3.

On March 12, 2009, Plaintiff filed an Application To Proceed *In Forma Pauperis*, that the court granted on March 13, 2009.

On April 7, 2009, the Government filed a Motion To Dismiss, pursuant to RCFC 12(b)(1) and RCFC 12(b)(6) ("Gov't Mot"). On June 30, 2009, Plaintiff filed a Response ("Pl. Resp."). On July 17, 2009, the Government filed a Reply ("Gov't Reply").

## III. DISCUSSION.

### A. Jurisdiction.

■ The Tucker Act, 28 U.S.C. § 1491(a)(1), authorizes the United States Court of Federal Claims to render judgment and money damages on any claim against the United States based on: the United States Constitution; an Act of Congress; a regulation of an executive department; or an express or implied contract with the United States. *United States v. Mitchell*, 463 U.S. 206, 212–18, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983); *see also United States v. Testan*, 424 U.S. 392, 397–98, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976). The United States Supreme Court, however, has held that the Tucker Act does not create any substantive right for money damages. *Mitchell*, 463 U.S. at 216, 103 S.Ct. 2961; *see also Testan*, 424 U.S. at 398, 96 S.Ct. 948. Therefore, a complaint filed in the United States Court of Federal Claims also must identify and plead an independent contractual relationship, or a constitutional provision, federal statute, and/or executive agency regulation that provides a substantive

Plaintiff's Exhibits In Support ("Pl. Ex. A–B").

right to money damages in order for the court to have jurisdiction. *Todd v. United States*, 386 F.3d 1091, 1094 (Fed.Cir.2004) ("[J]urisdiction under the Tucker Act requires the litigant to identify a substantive right for money damages against the United States separate from the Tucker Act[.]").

In determining whether the United States Court of Federal Claims has jurisdiction over a claim, the United States Court of Appeals for the Federal Circuit has instructed that "the trial court at the outset shall determine ... whether the Constitutional provision, statute, or regulation is one that is money-mandating. If the court's conclusion is that the Constitutional provision, statute, or regulation meets the money-mandating test, the court shall declare it has jurisdiction over the cause, and shall then proceed with the case in the normal course." *Fisher v. United States*, 402 F.3d 1167, 1173 (Fed.Cir.2005).

### B. Standard For Decision On A Motion To Dismiss, Pursuant To RCFC 12(b)(1).

■ A challenge to the "[United States Court of Federal Claims'] general power to adjudicate in specific areas of substantive law ... is properly raised by a [Rule] 12(b)(1) motion[.]" *Palmer v. United States*, 168 F.3d 1310, 1313 (Fed.Cir.1999); *see also* RCFC 12(b)(1) ("Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion: (1) lack of subject-matter jurisdiction[.]"). When considering whether to dismiss an action for lack of subject matter jurisdiction, the court is "obligated to assume all factual allegations to be true and to draw all reasonable inferences in plaintiff's favor." *Henke*, 60 F.3d at 797. Nonetheless, the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed.Cir.1988) ("[O]nce the [trial] court's subject matter jurisdiction [is] put in question ... [plaintiff] bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence.").

### C. Standard For Decision On A Motion To Dismiss, Pursuant To RCFC 12(b)(6).

On May 18, 2009, the United States Supreme Court issued *Ashcroft v. Iqbal*, —— U.S. ——, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), re-affirming the pleading standard previously discussed in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). To survive a Fed. R.Civ.P. 12(b)(6) motion to dismiss, a complaint must "state a claim to relief that is plausible on its face," i.e., sufficient factual content must be pled on which a court may "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955). The Court explained that the plausibility standard "asks for more than a sheer possibility that [the] defendant has acted unlawfully." *Id.* "Plausibility of 'entitlement to relief'" requires more than pleading facts that are "merely consistent with" a defendant's liability. *Id.* (quoting *Twombly*, 550 U.S. at 557, 127 S.Ct. 1955).

In *Iqbal*, the Court discussed the "two, working principles" of *Twombly's* heightened pleading requirements. *Id.* First, although factual allegations alleged must be accepted as true, the trial court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 1949–50 (citing *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955). Accordingly, trial courts were advised to begin their analysis "by identifying the allegations [of law] in the complaint that are not entitled to the assumption of truth." *Id.* at 1951. If the legal allegations are of a "conclusory nature," they are not entitled to the presumption of truth. *Id.* Second, to survive a Fed.R.Civ.P. 12(b)(6) motion to dismiss, a complaint also must state a "plausible claim for relief." *Id.* at 1950 (citing *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955). Here, factual allegations are examined to determine "if they plausibly suggest an entitlement to relief." *Id.* at 1951.

### D. Pleading Requirements Of A *Pro Se* Plaintiff.

In the United States Court of Federal Claims, the pleadings of a *pro se* plaintiff are

held to a less stringent standard than those of litigants represented by counsel. *Hughes v. Rowe*, 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980) (holding the *pro se* complaints, "however inartfully pleaded," are held to "less stringent standards than formal pleadings drafted by lawyers") (quotation and citation omitted). Indeed, it has been the tradition of the court to examine the record "to see if [a pro se] plaintiff has a cause of action somewhere displayed." *Ruderer v. United States*, 188 Ct.Cl. 456, 412 F.2d 1285, 1292 (1969). Nevertheless, while the court may excuse ambiguities in a pro se plaintiff's complaint, the court "does not excuse [a complaint's] failures." *Henke v. United States*, 60 F.3d 795, 799 (Fed.Cir. 1995).

### E. The Government's April 7, 2009 Motion To Dismiss.

#### 1. The Parties' Arguments.

##### a. The Government's Argument

The Government asserts several arguments to support why the February 6, 2009 Complaint must be dismissed. First, although the February 6, 2009 Complaint is owed "considerable deference," because of Plaintiff's *pro se* status, it does not state a claim within congressionally authorized authority, because the court cannot adjudicate claims sounding in tort. Gov't Mot. at 5. Petitioner's claim regarding alleged lost property must be brought under the Federal Tort Claims Act, 28 U.S.C. § 1346(b)(1) ("FTCA"), since "challenges to the lawfulness or propriety of Government actions sound in tort." *Id.* at 6. To the extent that the February 6, 2009 Complaint alleges claims against the Individual Defendants, the court does not have subject matter jurisdiction against individual federal officials. *Id.* at 6 n. 5. The United States District Courts have exclusive jurisdiction over tort suits against individual federal officials. *Id.*

Second, the Government argues that, to the extent the February 6, 2009 Complaint is construed as a claim under the Takings Clause of the Fifth Amendment, the court does not have subject matter jurisdiction, because the federal government's conduct at issue was unauthorized. *Id.* at 7. A compensable takings action arises only when "the government intends to invade a protected property interest or the asserted invasion is the direct, natural, or probable result of an authorized activity." *Columbia Basin Orchard v. United States*, 132 Ct.Cl. 445, 132 F.Supp. 707, 709 (1955) (quotation omitted). The federal government employees involved in this case allegedly took Plaintiff's ring. Compl. ¶ 2. Because Plaintiff contests the legality of the underlying federal government conduct, *ipso facto*, the court does not have jurisdiction. Gov't Mot. at 8–9. In addition, the February 6, 2009 Complaint must be dismissed, because the alleged seizure of the ring was not taken for public use. *Id.*

Third, the February 6, 2009 Complaint fails to state a valid "implied-in-fact bailment contract," because the ring at issue was not voluntarily delivered to the Government. *Id.* at 10. Moreover, federal courts have had a "uniform reluctance to find an implied bailment contract ... where plaintiff's property has been seized pursuant to the Government's exercise of its police power." *Id.* (quoting *Alde, S.A. v. United States*, 28 Fed. Cl. 26, 30 (1993)).

Finally, the Government argues that this case should not be transferred to a federal district court, because the Federal Tort Claims Act specifically exempts the United States from liability for claims arising from the detention of goods or merchandise by law enforcement officers under 28 U.S.C. § 2680(c). *Id.* at 11–12. Therefore, this case must be dismissed.

#### b. Plaintiff's Response.

Plaintiff responds that claims made against Government officials are actionable when they are accused of the intentional tort of theft. Pl. Resp. at 1 (citing 28 U.S.C. § 2680(h)).

In the alternative, if the Government's Motion to Dismiss is granted, Plaintiff moves for leave to amend the February 6, 2009 Complaint to reduce the amount of damages claimed to an amount that does not exceed $1,000. Pl. Resp. at 1. If allowed to do so, Plaintiff believes the Government would have the authority to settle his claim, pursuant to 31 U.S.C. §§ 3721, 3722. *Id.*

### c. The Government's Reply.

The Government opposes Plaintiff's Motion For Leave To Amend to reduce the amount claimed, because Plaintiff is not entitled to settlement under 31 U.S.C. §§ 3721, 3722. Gov't Reply at 2, 4. Those statutes deal exclusively with claims brought by military personnel and government employees. *Id.* at 4. Because Plaintiff is not a member of the uniformed services, he cannot initiate an action under Section 3721. *Id.* Also, because Plaintiff is an inmate, he is not within the class of persons entitled to initiate an action under Section 3722. *Id.*

Although the court may consider whether "it is in the interest of justice" to transfer Plaintiff's suit, the court should not do so when it would be futile. 28 U.S.C. § 1631; *see also Little River Lumber Co. v. United States,* 7 Cl.Ct. 492, 494 (1985) ("[A] case should not be transferred or retransferred to a District Court if it most probably would be a futile act."). The sovereign immunity of the United States is waived only by the FTCA in claims where federal employees act within the scope of their employment. Gov't Reply at 6. Since the FTCA does not apply to federal employees acting outside the scope of their employment, transfer to a federal district court would be futile. *Id.*

### 2. The Court's Resolution.

### a. The February 6, 2009 Complaint Alleges Claims That Arise In Tort.

The United States District Courts have exclusive jurisdiction in actions brought under the Federal Tort Claims Act. 28 U.S.C. § 1346(b)(1) (2000) ("[T]he district courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages . . . for injury or loss of property, . . . caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment[.]"); *see also Wood v. United States,* 961 F.2d 195, 197 (Fed.Cir.1992) ("[D]istrict courts . . . have exclusive jurisdiction over tort claims for any amount if they fall within the Federal Tort Claims Act[.]").

■ The February 6, 2009 Complaint alleges that, during the time Plaintiff was in federal custody, the Government "seized" and failed to return Plaintiff's property, or, in the alternative, that his property was lost as a result of the Government's theft. Compl. ¶¶ 2, 4; *see also* Pl. Resp. at 1–2. Because both of these theories sound in tort, the United States Court of Federal Claims does not have subject matter jurisdiction over the claims alleged in the February 6, 2009 Complaint. 28 U.S.C. § 1491(a)(1) ("The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States . . . for liquidated or unliquidated damages in cases not sounding in tort.") (emphasis added).

### b. The February 6, 2009 Complaint Fails To State A Claim Under The Fifth Amendment Takings Clause.

■ The Takings Clause of the Fifth Amendment states that "private property [shall not] be taken for public use, without just compensation." U.S. CONST. amend. V. The Tucker Act authorizes the court to adjudicate a claim against the United States founded upon the United States Constitution. *Lion Raisins, Inc. v. United States,* 416 F.3d 1356, 1362 (Fed.Cir.2005) ("The Tucker Act broadly provides jurisdiction for any claim against the United States founded . . . upon the Constitution . . . [t]his includes on its face all takings claims against the United States.") (quotation and citation omitted). A claimant alleging a Fifth Amendment takings claim in the United States Court of Federal Claims, however, "must show that the United States, by some specific action, took a private property interest for public use without just compensation." *Short v. United States,* 50 F.3d 994, 1000 (Fed.Cir.1995). The United States Court of Appeals for the Federal Circuit has developed a two-part test to analyze a takings claim. *Am. Pelagic Fishing Co., L.P. v. United States,* 379 F.3d 1363, 1372 (Fed.Cir.2004). First, "as a threshold matter, the court must determine whether the claimant has established a property interest for purposes of the Fifth Amendment." *Id.* If the claimant "fails to demonstrate the existence of a legally cognizable property interest, the court['] task is at an end." *Id.*

Second, "after having identified a valid property interest, the court must determine whether the government action at issue amounted to a compensable taking of that property interest." *Id.*

■ For a compensable taking to occur, the Government must obtain more than mere custodial possession; the Government's action must deprive an owner permanently of property. *Kessler v. United States,* 229 Ct. Cl. 472, 472 (1981) ("For a compensable taking to occur, however, it is axiomatic that the Government must obtain more than mere custodial possession. Instead, the Government action must deprive the owner permanently of property.").[2] In addition, the private property at issue must be taken by lawful government action and for a public use. *Adams v. United States,* 391 F.3d 1212, 1218 (Fed.Cir.2004) ("A claimant under the Takings Clause must show that the government, by some specific action, took a private property interest for a public use without just compensation."); *Gahagan v. United States,* 72 Fed.Cl. 157, 161–62 (2006) (holding that the complaint failed to state a compensable takings claim, because Plaintiff challenged the lawfulness of the underlying government action but did not demonstrate that the property was taken for a public use).

■ The February 6, 2009 Complaint places the lawfulness of the Government's actions at issue, but does not allege that the ring was taken for a public use. Compl. ¶ 2. Instead, the Government is alleged to have "confiscated" Plaintiff's ring and must "accept responsibility." Compl. ¶ 2; *see also* Pl. Ex. B; Pl. Resp. at 2. These allegations, however, do not state a claim within the Fifth Amendment Takings Clause. *Crocker v. United States,* 37 Fed.Cl. 191, 196, *aff'd,* 125 F.3d 1475, 1476 (1997) (holding that a takings claim "must not be that the Government's conduct in and of itself violated law, but that the effect of a valid exercise of sovereign immunity resulted in the taking of private property for public use, but without payment.").

Of particular relevance in this case is that the Fifth Amendment Takings Clause must be construed in harmony with the police power. *AmeriSource Corp. v. United States,* 525 F.3d 1149, 1153 (Fed.Cir.2008) (holding that public use does not include "any government use of private property aimed at promoting the common good, including enforcement of the criminal laws," but rather, "has a narrower meaning because courts have construed it in harmony with the police power."); *see also Alde, S.A.,* 28 Fed.Cl. at 34 ("There is a difference between government action that constitutes an exercise of police power and action that constitutes a compensable taking. If the Government acts to secure a benefit for the public, a taking arises. Government action taken to prevent harm to the public is [a non-compensable] exercise of the police power."). In this case, the Government did not seize Plaintiff's ring to "secure a benefit for the public." *Alde, S.A.,* 28 Fed.Cl. at 34. Therefore, Plaintiff's ring was not taken for "a public use" within the meaning of the Fifth Amendment Takings Clause.

Since the February 6, 2009 Complaint alleges that the Government's actions regarding Plaintiff's ring were unlawful and Plaintiff's personal property was not taken for a public use, as a matter of law, any Takings Clause claim alleged by the February 6, 2009 Complaint must be dismissed.

### c. The February 6, 2009 Complaint Fails To State An Implied–In–Fact Bailment Contract.

■ Jurisdiction under the Tucker Act also includes express or implied-in-fact contracts. 28 U.S.C. § 1491(a)(1) ("The United States Court of Federal Claims shall have jurisdiction to render judgment . . . upon any expressed or implied contract with the United States[.]"). An implied-in-fact contract is one "founded upon a meeting of the minds, which, although not embodied in an express contract, is inferred, as a fact, from conduct of the parties showing, in the light of the surrounding circumstances, their tacit understanding." *Baltimore & Ohio R.R. Co. v. United States,* 261 U.S. 592, 597, 58 Ct.Cl.

---

**2.** Therefore, a taking might occur if the Government failed to return Plaintiff's property when he is no longer in custody. *Kessler,* 229 Ct.Cl. at

472. Such a claim, however, is not ripe for adjudication, because Plaintiff is still in federal custody.

709, 43 S.Ct. 425, 67 L.Ed. 816 (1923) (holding that an implied-in-fact contract "will not be implied unless the meeting of minds was indicated by some intelligible conduct, act or sign."). To prove an implied-in-fact contract, a claimant must establish: "(1) mutuality of intent, (2) consideration, (3) an unambiguous offer and acceptance, and (4)' actual authority' on the part of the government's representative to bind the government in contract." *Hanlin v. United States*, 316 F.3d 1325, 1328 (Fed.Cir.2003).

A bailment contract may fall within the scope of the Tucker Act. *Johns–Manville Corp. v. United States*, 12 Cl.Ct. 1, 25 (1987) ("A bailment contract that serves as the basis for recovery in this court must be either express or implied-in-fact."); *see also Hatzlachh Supply Co. v. United States*, 444 U.S. 460, 465 n. 5, 466, 100 S.Ct. 647, 62 L.Ed.2d 614 (1980) (explaining that jurisdiction under the Tucker Act extends to contracts that are express or implied-in-fact, and that the lack of a tort remedy has no bearing on the jurisdiction under the Tucker Act). Our predecessor court held many years ago that a bailment occurs when "an owner, while retaining title, delivers personalty[3] to another for some particular purpose upon an express or implied contract. The relationship includes a return of the goods to the owner or a subsequent disposition in accordance with his instructions." *Lionberger v. United States*, 178 Ct.Cl. 151, 371 F.2d 831, 840 (1967).

The February 6, 2009 Complaint alleges that the Government gave Plaintiff a receipt evidencing a "promise" to return the ring after Plaintiff's trial and sentencing. Compl. ¶ 2; *see also* Pl. Ex. A. These actions alone, however, do not evidence mutual intent to contract or the consideration required for the formation of an implied-in-fact contract. *Hanlin*, 316 F.3d at 1328. Instead, the February 6, 2009 Complaint alleges that the Government "seized" Plaintiff's ring, not that the parties' entered into an agreement concerning the ring. Compl. ¶ 2; *see also Llamera v. United States*, 15 Cl.Ct. 593, 599 (1988) (refusing to view the unilateral act of federal officials seizing plaintiff's personal property as evidence of any intent to enter into a bailment agreement and, in addition, there was also no basis for finding consideration); *Alde, S.A.*, 28 Fed.Cl. at 32 (holding that the unilateral acts of the Customs Service in seizing plaintiff's personal property and the compelled acquiescence "can hardly be viewed" as a manifest intent to enter into a bailment contract).

In addition, the February 6, 2009 Complaint fails to state sufficient facts to establish that a valid bailment occurred. *Lionberger*, 371 F.2d at 840. In this case, Plaintiff did not "deliver personalty" to the Government. *Id.* Instead, Plaintiff's property allegedly was "seized." Compl. ¶ 2. Moreover, the February 6, 2009 Complaint does not allege that the ring would be returned to Plaintiff "in accordance with his instructions," another prerequisite for a valid bailment. *Id.* At best, the Government allegedly only "promised" Plaintiff that the ring would be returned. *Id.* Since Plaintiff did not voluntarily deliver the ring to the Government with instructions for disposition or return, the February 6, 2009 Complaint fails to allege sufficient facts of a valid implied-in-fact bailment.

For these reasons, the claim of an implied-in-fact bailment contract in the February 6, 2009 Complaint must be dismissed.

**d. Amending The February 6, 2009 Complaint To Reduce The Amount Claimed To $1,000 Would Be Futile.**

In the event that the Government's Motion To Dismiss is granted, Plaintiff moves for Leave To Amend the February 6, 2009 Complaint to reduce damages to an amount that does not exceed $1,000, to file a claim, pursuant to 31 U.S.C. §§ 3721,[4] 3722.[5] Pl. Resp. at 1.

---

**3.** "Personalty" is defined as "personal property as distinguished from real property." BLACK'S LAW DICTIONARY 1180 (8th ed.2004).

**4.** Section 3721 of Title 31 of the United States Code provides in pertinent part:

The head of an agency may settle and pay not more than $40,000 for a claim against the Government made by a member of the uniformed services under the jurisdiction of the agency or by an officer or employee of the agency for damage to, or loss of, personal

RCFC 15(a)(2) allows a party "to amend ... pleading[s] only with the opposing party's consent or the court's leave. The court should freely give leave when justice so requires." The decision to allow or deny an opportunity to amend is within the sound discretion of the court. *Foman v. Davis*, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). *Foman*, however, makes clear that the decision to deny a plaintiff the opportunity to amend without any stated justification is an abuse of discretion. *Id.* at 182. *Foman* suggested five factors that would justify denial of a motion for leave to amend a complaint:

> In the absence of any apparent or declared reason-such as [1] undue delay, [2] bad faith or dilatory motive on the part of the movant, [3] repeated failure to cure deficiencies by amendments previously allowed, [4] undue prejudice to the opposing party by virtue of allowance of the amendment, [5] futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'

*Id.*

Under *Foman*'s fifth rationale, if the court believes a proposed amendment would be futile, leave to amend may be denied. *Id.; see also Leider v. United States*, 301 F.3d 1290, 1299 n. 10 (Fed.Cir.2002) ("[I]n light of our agreement with the district court that the undisputed facts of this case do not support [either of Plaintiff's claims], permitting [Plaintiff] leave to amend would be futile."). Plaintiff requests leave to amend the February 6, 2009 Complaint, pursuant to 31 U.S.C. §§ 3721, 3722. Pl. Resp. at 1. Neither statute, however, affords Plaintiff the relief he seeks. Section 3721 authorizes the head of an agency to "settle and pay not more than $40,000 for a claim against the [federal] Government made by a member of the uniformed services ... for damage to, or loss of, per-

sonal property incident to service." 31 U.S.C. § 3721(b)(1). Likewise, Section 3722 authorizes the Attorney General to "settle and pay not more than $1,000 in any one case for a claim made by an officer or employee at a United States Government penal or correctional institution for damage to, or loss of, personal property incident to employment." 31 U.S.C. § 3722(a). Since both statutes deal exclusively with claims brought by members of the uniformed service or officers and employees of a correctional institution, Plaintiff is not entitled to settlement of his claims under either statute. Therefore, allowing Plaintiff to amend would be futile. *Foman*, 371 U.S. at 182, 83 S.Ct. 227.

Accordingly, Plaintiff's June 30, 2009 Motion For Leave To Amend is denied.

**e. Transfer Of This Matter To A United States District Court Is Proper.**

Section 1631 of Title 28 of the United States Code provides that if a court does not have jurisdiction, it "shall, if it is in the interest of justice, transfer such action ... to any other such court in which the action ... could have been brought at the time it was filed." 28 U.S.C. § 1631. The court does not have jurisdiction to adjudicate Plaintiff's tort claims. Under the FTCA, 28 U.S.C. § 1346(b)(1), however, the district courts "shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages ... for injury or loss of property ... caused by the negligent or wrongful act or omission of any employee of the Government while acting with the scope of his office or employment." 28 U.S.C. § 1346(b)(1). The FTCA exempts, however, among other things, "any claim arising in respect of ... the detention of any goods, merchandise, or other property by any officer of customs or excise or any other law enforcement officer[.]" 28 U.S.C. § 2680(c).

property incident to service. If, however, the claim arose from an emergency evacuation or from extraordinary circumstances, the amount settled and paid under the authority of the preceding sentence may exceed $40,000, but may not exceed $100,000. A claim allowed under this subsection may be paid in money or the personal property replaced in kind. 31 U.S.C. § 3721(b)(1).

**5.** Section 3722(a) of Title 31 of the United States Code provides: "[t]he Attorney General may settle and pay not more than $1,000 in any one case for a claim made by an officer or employee at a United States Government penal or correctional institution for damage to, or loss of, personal property incident to employment." 31 U.S.C. § 3722(a).

As the sovereign, the United States is immune from suit unless it has consented to be sued. *Fed. Deposit Ins. Corp. v. Meyer,* 510 U.S. 471, 475, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994) ("Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit."). Through the FTCA, the United States has consented to suits "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment[.]" 28 U.S.C. § 1346(b)(1); *see also Truman v. United States,* 26 F.3d 592, 594 (5th Cir.1994) ("Through the enactment of the FTCA, the government has generally waived its sovereign immunity from tort liability for the negligent or wrongful acts or omissions of its agents who act within the scope of their employment.").

 No suit may be filed under the FTCA, however, unless the claimant has made a timely application to the agency involved for administrative settlement and the claim has been denied or not acted upon for 6 months. 28 U.S.C. § 2675; *see also* 28 U.S.C. § 2401(b) ("A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented."). The purpose of this administrative claim procedure is to allow the agency to consider possible settlement "without the need for filing suit and possible expensive and time-consuming litigation." S.Rep. No. 1327, 89th Cong., 2d Sess. 3 (1966), U.S.Code Cong. & Admin.News 1966, pp. 2515, 2517. In *McNeil v. United States,* 508 U.S. 106, 113 S.Ct. 1980, 124 L.Ed.2d 21 (1993), the United States Supreme Court held that prior filing of an administrative claim is a jurisdictional prerequisite for any judicial proceeding. *Id.* at 110–12, 113 S.Ct. 1980 (holding that full exhaustion of the administrative remedy is necessary before a lawsuit can be initiated). Accordingly, the Government created Standard Form 95 for this purpose, though an administrative claim does not need to be submitted on a special form, as long as the agency receives timely and reasonable notice of a claim of tortious wrongdoing. *Williams v. United States,* 693 F.2d 555, 557 (5th Cir.1982) ("[W]e have held that no particular form or manner of giving such notice is required as long as the agency is somehow informed of the fact of and amount of the claim within the two year period ... neither a Form 95 nor any other particular form of claim is required[.]").[6]

 In this case, the February 6, 2009 Complaint alleges that the Government "seized" Plaintiff's ring on May 26, 2006. Compl. ¶ 2. On October 5, 2008, Plaintiff submitted a handwritten claim to the United States Marshals Office, amending his previous oral claim. Pl. Ex. B. Therein, Plaintiff states that he wrote Individual Defendant Jennifer Fitzgerald on August 8, 2007 requesting the return of his ring. Pl. Ex. B. In addition, Plaintiff represents that he sent the United States Marshals Office Standard Form 95 "approximately 6[or] 7 weeks" before the October 5, 2008 letter. *Id.* On one hand, this handwritten claim may be barred by the two-year statute of limitations. 28 U.S.C. § 2401(b). Plaintiff, however, did not include copies of the August 8, 2007 letter to Individual Defendant Jennifer Fitzgerald or Standard Form 95 as Exhibits in this case. Therefore, on the record before the court, it is unclear when the claim arose and whether Plaintiff satisfied the administrative procedures required under 28 U.S.C. §§ 2675 and 2401(b). For these reasons, the interests of justice require the court to transfer this case to the United States District Court for the Southern District of Indiana[7] to determine these issues.

---

**6.** Pursuant to the "discovery rule," a claim does not arise until a plaintiff knows or reasonably should have known of an alleged injury and cause. *United States v. Kubrick,* 444 U.S. 111, 117, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979) (applying the "discovery rule" to the two year FTCA statute of limitations).

**7.** Venue for an action under the FTCA lies "only in the judicial district where the plaintiff resides or wherein the act or omission complained of occurred." 28 U.S.C. § 1402(b). As a prisoner at the Federal Correctional Complex in Terre

■ Even if assuming that Plaintiff has satisfied the administrative claim procedures under the FTCA, the Government argues that the February 6, 2009 Complaint still does not state a valid claim under the FTCA. Gov't Mot. at 11–12. Although the district courts have jurisdiction under the FTCA for civil actions on claims against the United States for loss of property caused by negligent or wrongful acts of Government employees, the detention of goods or other property by law enforcement officers is specifically exempted. 28 U.S.C. § 1346(b)(1); *see also* 28 U.S.C. § 2680(c). Recently, the United States Supreme Court held that Bureau of Prison officers who allegedly lost an inmate's personal property during his transfer to another prison were "law enforcement officers" as that term is used in the FTCA. *Ali v. Federal Bureau of Prisons*, 552 U.S. 214, 128 S.Ct. 831, 841, 169 L.Ed.2d 680 (2008). As such, the Court concluded that the text of 28 U.S.C. § 2680(c) is unambiguous and "forecloses lawsuits against the United States for the unlawful detention of property by 'any,' not just 'some,' law enforcement officers." *Id.* at 841. Any "law enforcement officer" includes the United States Marshals. *Schlaebitz v. United States*, 924 F.2d 193, 194 (11th Cir.1991) (holding that United States Marshals are "law enforcement" officials entitled to immunity under 28 U.S.C. § 2680(c)); *see also Halverson v. United States*, 972 F.2d 654, 656 (5th Cir.1992)(same). Section 2680(c), however, does not completely address the potential remedies an individual may have against the Government when authorized agents commit intentional torts. The February 6, 2009 Complaint alleges that the Individual Defendants "seized" Plaintiff's ring and that the loss of property was "due to theft, and not because of negligence." Compl. ¶ 2; *see also* Pl. Resp. at 2. As the Government concedes, "by contending that the Government unlawfully retained his property, [Plaintiff] effectively asserts a tort claim for conversion." Gov't Mot. at 6. The tort of conversion consists of "depriving a rightful owner of his personal property, or control of that property." RESTATEMENT (SECOND) OF TORTS, § 222A(1) (1965).

Section 2680(h) of Title 28 of the United States Code, *i.e.*, the "intentional tort exception," governs claims arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights. 28 U.S.C. § 2680(h) (the United States has not waived sovereign immunity for "[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights."). Not all intentional torts, however, are excluded. For example, trespass, conversion, and intentional infliction of emotional distress are not excluded. *Id.; see also Estate of Trentadue ex rel. Aguilar v. United States*, 397 F.3d 840, 858–59 (10th Cir.2005) (holding that recovery for intentional infliction of emotional distress under § 2680(h) is possible if all elements of that tort are established). The same provision also waives sovereign immunity for specific intentional torts committed by law enforcement and investigative officers. 28 U.S.C. § 2680(h) (explaining that the FTCA shall apply "to acts or omissions of investigative or law enforcement officers of the United States Government ... [for] any claim arising ... out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution."). The intentional tort of conversion is neither listed in the enumerated list of specific intentional torts excluded nor in the enumerated list of specific intentional torts not exempted when committed by a law enforcement officer. *Id.* Therefore, a plaintiff may be able to bring an action under 28 U.S.C. § 2680(h) against law enforcement officers for the intentional tort of conversion.

For these reasons, the court has decided to transfer this case to the United States District Court for the Southern District of Indiana to determine whether Plaintiff has satisfied the administrative claim procedures required by the FTCA and whether jurisdiction may lie under 28 U.S.C. § 2680(h), where a complaint alleges that law enforce-

Haute, Indiana, Plaintiff currently resides in the

Southern District of Indiana. Pl. Ex. B.

ment officers committed the intentional tort of conversion.

## IV. CONCLUSION.

For the reasons stated herein, the Government's April 7, 2009 Motion To Dismiss, pursuant to RCFC 12(b)(1) and RCFC 12(b)(6), is granted in part and denied in part. Plaintiff's June 30, 2009 Motion For Leave To Amend is denied. The Clerk of the Court for the United States Court of Federal Claims is directed to transfer this case to the United States District Court for the Southern District of Indiana.

**IT IS SO ORDERED.**