Omaira ARBELAEZ, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 09–505C.

United States Court of Federal Claims.

Sept. 23, 2010.

Omaira Arbelaez, Carrollton, TX, pro se.

Scott A. MacGriff, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, counsel of record for defendant, with whom were Tony West, Assistant Attorney General, Jeanne E. Davidson, Director, Kenneth Dintzer, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC.

## ORDER & OPINION

DAMICH, Judge:

Plaintiff Omaira Arbelaez has filed a complaint, *pro se*, alleging several causes of action against the government: 1) "trover and conversion"; 2) "destruction"; 3) "unlawful interference with contracts"; 4) "unlawful retention"; and 5) "breach of duty." [1] Compl. ¶¶ 9–10, 19–42. These claims stem from the seizure of certain property by the FBI in conjunction with the 1993 arrest of Ms. Arbelaez's husband, Alejandro Ordonez, on federal drug charges. Compl. Ex. 9; A13–14.[2] Ms. Arbelaez has styled her complaint "as a third party seeking to recover an alleged interest in the unforfeited property." Compl. 1.

On December 4, 2009, in lieu of an answer to the complaint, the government filed a motion to dismiss for lack of jurisdiction or, in the alternative, for summary judgment. Plaintiff filed her response on March 11,

2010, and the government filed its reply on March 29, 2010. On May 21, 2010, the court directed the parties to file supplemental briefs on the question of Plaintiff's standing to bring suit. Defendant's brief was filed on July 1, 2010; Plaintiff's supplemental brief, after missing the first deadline, was filed on July 30, 2010. The government seeks dismissal on several grounds. First, it argues that Plaintiff's claims are barred by the statute of limitations. It also avers that Plaintiff has failed to join Mr. Ordonez, a necessary and indispensible party, pursuant to Rule 19 of the Rules of the Court of Federal Claims ("RCFC"), but further that, even if Mr. Ordonez were joined as a party, the Court would then lack jurisdiction under 28 U.S.C. § 1500 because Mr. Ordonez's claims are the subject of a pending suit previously filed in United States District Court in California (currently on appeal to the United States Court of Appeals for the 9th Circuit). The government also argues that the court lacks subject matter jurisdiction over certain of Plaintiff's claims sounding in tort and, finally, that Plaintiff's breach of contract claim fails because she has not properly alleged a contract with the United States. *See* Def.'s Mot. to Dismiss *passim*. In addition, in response to the court's order to the parties for supplemental briefing, the government urges dismissal for lack of standing. *See* Def.'s Resp. to the Court's May 21, 2010 Questions ("Def.'s Suppl. Br.") *passim*. For the reasons discussed herein, the government's Motion to Dismiss is GRANTED.

## I. Background[3]

### A. Ordonez Arrest & Seizure of Property

On January 15, 1993, the FBI arrested Plaintiff's then-husband, Alejandro Ordonez,

---

1. These claims have been re-ordered for the purposes of this opinion to group Ms. Arbelaez's tort and non-tort claims, *see* discussion *infra* Parts III.A, III.B, III.C; in the order of appearance in her complaint, the causes of action are trover and conversion, destruction, unlawful retention, unlawful interference with contracts, and breach of duty.

2. For convenience, documents contained in the Government's appendix to its Motion to Dismiss

will be referred to as, "A_"; pp. 1–66 of this appendix comprise the exhibits attached to Plaintiff's complaint.

3. The factual recitations that follow do not constitute this court's findings of fact; rather, they are taken from the averments contained in Plaintiff's complaint, which are assumed to be true in weighing Defendant's motion to dismiss.

on various drug charges. Compl. Ex. 9; A88; *see also United States v. Ordonez*, No. 93–181 (C.D.Cal.1993). At the time of the arrest, the FBI agents seized certain property that was in Mr. Ordonez's possession. A13–14. The items seized were inventoried and recorded on three FBI "Receipt for Property Received/Returned/Released/ Seized" ("FD–597") forms. A162–64. These forms bear Mr. Ordonez's signature. *Id.* Four days after the arrest, on January 19, 1993, the FBI located, inside a briefcase that was among the items seized, a cashier's check payable to Ricardo Arbelaez, Plaintiff's father. Compl. ¶ 13; A166. The check was drawn from the Deutsch–Sudamerikanische Bank in the amount of 123,516 Deutsche Marks ("DM") (approximately $175,000; *see* Compl. 13). The check was placed into storage with the other seized items belonging to Mr. Ordonez. A166. In addition, the FBI seized business documents described as "in regard to Highland Coffee" Corporation, a family business that Plaintiff and her husband operated. A1, 14.

**B. Prior Actions to Recover Property**

Approximately six months after his criminal conviction was affirmed on appeal, Mr. Ordonez filed a motion in the United States District Court for the Central District of California seeking the return of his property. *See United States v. Ordonez*, No. 97–1979 (C.D.Cal.1997). Included among the items sought were the Ricardo Arbelaez cashier's check and the Highland Coffee business documents. A104–106. In connection with this case, Ms. Arbelaez submitted an affidavit (co-signed with her son, Francisco Ordonez) which stated that as of January 3, 1997, she had yet to receive any of the seized property back from the government. A137. The government did not oppose Mr. Ordonez's motion, A111, and requested that he identify a recipient for the property. A113. (As Mr. Ordonez was incarcerated at the time of his motion, he was ineligible to receive the property himself. A169.) However, according to FBI Special Agent George Q. Fong, Mr. Ordonez never designated an individual to receive the property, and, as a result, the property was not released. A170; *see also* A35. Mr. Ordonez then filed a motion for

judgment on the pleadings, which the court denied in November 1997. *United States v. Ordonez*, No. 77–1979, docket no. 12; A65.

In November 1999, Mr. Ordonez filed a *Bivens* action in the Central District of California, alleging various civil rights violations in conjunction with his arrest. *See Ordonez v. Johnson*, No. 99–9229 (C.D.Cal.1999). After extensive litigation, the court dismissed the case; the United States Court of Appeals for the Ninth Circuit affirmed the dismissal in August 2006. A73–81.

In June 2007, Mr. Ordonez filed yet another motion for return of property, also in the Central District of California. *See Ordonez v. United States*, No. 07–3751 (C.D.Cal.2007). The court granted his motion and ordered the government to provide Mr. Ordonez with an inventory of the items in its possession. *Id.*, docket no. 11. Mr. Ordonez designated Ms. Lina Giraldo as a recipient, and on September 25, 2007, the FBI mailed Mr. Ordonez's property to Ms. Giraldo. A10. On June 18, 2008, the government filed a "Final Accounting" of Mr. Ordonez's property with the court, listing the items that had been returned to Ms. Giraldo, including the Deutsch–Sudamerikanische Bank cashier's check, and other items presumed lost or destroyed. A114–20.

Mr. Ordonez then sought damages stemming from the government's retention of the property in question. *Ordonez v. United States*, No. 07–3751, docket no. 28. Ms. Arbelaez filed an affidavit in support of his motion; that same affidavit was later appended to her complaint in this court. *Compare* A4, *with* A141. In September 2009, approximately one month after Ms. Arbelaez filed suit in this court, the district court in California denied Mr. Ordonez's motion, holding that he had failed to establish both a possessory interest in the seized property and the monetary value of that property. *Id.*, docket no. 40; A87–98. Mr. Ordonez appealed that denial to the Ninth Circuit; his appeal is still pending before that court. A101.

**C. Ms. Arbelaez's Action Before This Court**

Ms. Arbelaez filed her complaint *pro se* with this court on August 3, 2009. From the

complaint and two rounds of briefing, it is evident that Ms. Arbelaez's claim against the government derives from the cashier's check and the unspecified business documents of Highland Coffee (described in the Complaint variously as "documentary materials," Compl. 4, and "documents and contracts in relation to Highland Coffee Corp.'s business," *id.* at 5, etc.) that were among the possessions of Mr. Ordonez that were seized by the government. Ms. Arbelaez subsequently obtained possession of the check—presumably from Ms. Giraldo—but by that time it was not negotiable. The Highland Coffee documents were either lost or destroyed while in the possession of the government.[4] The check presumably had something to do with Highland Coffee, the "family business," because, as vice president and area manager, *id.* at 5, 6, Ms. Arbelaez wants the government to pay the face value of the check "plus a compound interest of 10% per year" and other damages for the subsequent failure of the Highland Coffee business, the loss of various business equipment, and the loss of her home, for a total claim of $1,375,000.

The court is unclear about who owns the check and the business documents. Although they were in the possession of Mr. Ordonez, in his own suit to recover damages for the value of the same documents and other lost or destroyed items, the United States District Court for the Central District of California held that even Mr. Ordonez had failed "to establish that: (1) he had an ownership in the items listed in the government's final accounting and in the cashier's check; and (2) the value of those items." A94. The check is made out to Ricardo Arbelaez, and the business documents would seem to have belonged to the Highland Coffee corporation. Although Ms. Arbelaez alleges that she is the vice president and area manager of the corporation, it is not clear that she is the one entitled to sue on behalf of the corporation and that she is the one who would have been entitled to have possession of its documents.

Rather than having to address these particular threshold issues, the court will simply assume (for purposes of this opinion) that Ms. Arbelaez is a proper plaintiff. Even so, her complaint would have to be dismissed because: (1) she alleges certain causes of action not within the jurisdiction of the court; (2) she does not adequately state a claim for a Fifth Amendment taking of private property for public use; and (3) her takings and contract claims were filed too late. The court notes that, with regard to the check made out to Ricardo Arbelaez, the government concedes that Ms. Arbelaez is legally entitled to represent Ricardo Arbelaez, if he is (as she alleges) her father.

## II. Legal Standards

### A. *Pro se* plaintiffs are entitled to some leniency.

■ A complaint filed *pro se,* " 'however inartfully pleaded,' must be held to 'less stringent standards than formal pleadings drafted by lawyers.' " *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (quoting *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (per curiam)); *see also Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (per curiam) (overturning dismissal for failure to state a claim, holding that court's "departure from the liberal pleading standards ... is even more pronounced in this particular case because petitioner has been proceeding, from the litigation's outset, without counsel"); *Hughes v. Rowe,* 449 U.S. 5, 15, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980) (pro se pleadings held to a more lenient standard than those prepared by an attorney as "[a]n unrepresented litigant should not be punished for his failure to recognize subtle factual or legal deficiencies in his claims").

---

**4.** In a court-ordered accounting of seized items that had *not* been returned to Ms. Giraldo, the Government listed certain property that had been either lost or destroyed in the interim. This accounting included "numerous coffee company records" and "miscellaneous documents in re-

gard to Highl[and] Coffee." A88–89. According to an affidavit submitted by FBI Agent Fong, a black briefcase and other materials were apparently discarded or otherwise lost in November 1996 during an FBI office move. A29.

■ The leniency typically accorded to *pro se* pleadings does not, however, excuse failure to comply with a court's jurisdictional requirements: "[t]he fact that [plaintiff] acted *pro se* in the drafting of his complaint may explain its ambiguities, but it does not excuse its failures, if such there be." *Henke v. United States*, 60 F.3d 795, 799 (Fed.Cir. 1995); *see also Kelley v. Sec'y, U.S. Dep't of Labor*, 812 F.2d 1378, 1380 (Fed.Cir.1987) ("leniency with respect to mere formalities should be extended to a *pro se* party ... [but] a court may not similarly take a liberal view of [a] jurisdictional requirement and set a different rule for *pro se* litigants only."); *Carter v. United States*, 62 Fed.Cl. 66, 69 (Fed.Cl.2004) ("[w]hen ruling on motions to dismiss for lack of subject matter jurisdiction, however, a court's leniency is tempered by the exacting requirements of jurisdiction.").

The court thus will give a sympathetic reading to Ms. Arbelaez's complaint and "determin[e] all potential claims raised by the evidence," but cannot excuse failure to comply with mandatory jurisdictional requirements. *Szemraj v. Principi*, 357 F.3d 1370, 1373 (Fed.Cir.2004) (quoting *Roberson v. Principi*, 251 F.3d 1378, 1384 (Fed.Cir. 2001)); *see also Demes v. United States*, 52 Fed.Cl. 365, 369 (2002) ("[w]hile a court should be receptive to *pro se* plaintiffs and assist them, justice is ill-served when a jurist crosses the line from finder of fact to advocate.").

### B. This court can only decide cases over which it has jurisdiction.

■ A court's subject matter jurisdiction to entertain a claim or cause of action represents "a threshold matter that must be determined at the outset." *Hufford v. United States*, 87 Fed.Cl. 696, 701 (2009); *see also Steel Co. v. Citizens for a Better Env't* 523 U.S. 83, 94–95, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998). It may be challenged by the parties, or raised *sua sponte* by the court. *See Hall v. United States*, 91 Fed.Cl. 762, 769 (2010); *Matthews v. United States*, 72 Fed. Cl. 274, 278 (2006). If a court at any point determines that it lacks subject matter juris-

diction, it must dismiss the complaint. RCFC 12(h)(3).

■ The Tucker Act, 28 U.S.C. § 1491 (2006) prescribes the subject matter jurisdiction of the United States Court of Federal Claims, which "shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress ... or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491. The Act, however, is merely jurisdictional, and, as a result, "does not create any substantive right enforceable against the United States." *United States v. Testan*, 424 U.S. 392, 398, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976); *see also Fisher v. United States*, 402 F.3d 1167, 1172 (Fed.Cir.2005) (en banc) (holding that the Tucker Act does not itself "create a substantive cause of action").

■ Rather, " 'in order to come within the jurisdictional reach and the waiver of the Tucker Act, a plaintiff must identify a separate source of substantive law that creates the right to money damages,' " for example a federal statute or Constitutional Amendment. *Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin.*, 525 F.3d 1299, 1306 (Fed.Cir.2008) (quoting *Fisher*, 402 F.3d at 1172); *see also United States v. Mitchell*, 463 U.S. 206, 216–17, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983).

■ When faced, as here, with a Rule 12(b)(1) challenge to the court's subject matter jurisdiction, the court's role is "necessarily a limited one," where "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) *overruled on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800, 814–19, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *see also Demes*, 52 Fed.Cl. at 368. The burden of establishing that jurisdiction by a preponderance of the evidence, and thereby defeating a Rule 12(b)(1) motion, rests with the party seeking to invoke that jurisdiction. *See McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189,

56 S.Ct. 780, 80 L.Ed. 1135 (1936); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed.Cir.1988). The court must accept all factual allegations contained in the complaint as true and draw any reasonable inferences in the plaintiff's favor. *See Scheuer*, 416 U.S. at 236–37, 94 S.Ct. 1683; *Henke*, 60 F.3d at 797. But Plaintiff, at this stage, "cannot rely solely on allegations in the complaint but must bring forth relevant, adequate proof to establish jurisdiction." *Global Computer Enters. v. United States*, 88 Fed.Cl. 350, 402 (2009) (citing *McNutt*, 298 U.S. at 189, 56 S.Ct. 780).

## III. Discussion of Plaintiff's Claims

As noted earlier, Ms. Arbelaez states five causes of action in her complaint: 1) trover and conversion; 2) destruction; 3) unlawful interference with contracts; 4) unlawful retention; and 5) breach of duty. Compl. ¶¶ 9–10, 19–42. The government challenges the court's jurisdiction over these claims on numerous grounds. *See* Def.'s Mot. to Dismiss 7. This court's jurisdiction to entertain these claims will be addressed *seriatim*.

### A. Trover and Conversion, Destruction, and Unlawful Interference with Contracts

■ This court's jurisdiction under the Tucker Act explicitly excludes those claims "sounding in tort." 28 U.S.C. § 1491; *see also Rick's Mushroom Serv. v. United States*, 521 F.3d 1338, 1343 (Fed.Cir.2008). Ms. Arbelaez's claims for "trover and conversion," "destruction," and "unlawful interference with contracts" are claims sounding in tort. Accordingly, this court lacks subject matter jurisdiction to entertain these claims and they must be dismissed pursuant to Rule 12(h)(3). *See Rick's Mushroom Serv.*, 521 F.3d at 1343; *Mike's Contracting LLC v. United States*, 92 Fed.Cl. 302, 310 (2010).

Ms. Arbelaez's claim of "trover and conversion" is well established as a tort claim. *See Henke*, 60 F.3d at 797 n. 1; *Wood v. United States*, 961 F.2d 195, 198 (Fed.Cir.1992); *Husband v. United States*, 90 Fed.Cl. 29, 40–41 (2009); 90 C.J.S. *Trover and Conversion* § 2 (2010). Similarly, Ms. Arbelaez's claim for "destruction" sounds in tort. *See Monte-*

*go Bay Imports v. United States*, 25 Cl.Ct. 639, 641 (1992). Finally, "unlawful interference with contracts," Ms. Arbelaez's third cause of action, is also regarded as a tort claim. *See In re Supreme Beef Processors, Inc.*, 468 F.3d 248, 260–61 (5th Cir.2006); *Hoover Group, Inc. v. Custom Metalcraft, Inc.*, 84 F.3d 1408, 1411 (Fed.Cir.1996); *Cont'l Trend Res., Inc. v. OXY USA Inc.*, 101 F.3d 634, 635 (10th Cir.1996).

Accordingly, with respect to Ms. Arbelaez's claims asserting trover and conversion, destruction, and unlawful interference with contracts, the government's motion to dismiss is GRANTED.

### B. Unlawful Retention

In stating her claim for "unlawful retention," Ms. Arbelaez alleges "the taking of property by the United States." Compl. ¶ 27. This property consists principally of two components: 1) a cashier's check payable to Ricardo Arbelaez in the amount of 123,516 DM; and 2) "documentary materials and business property documents" relating to the corporation in which Plaintiff was an officer, Highland Coffee. *See* Compl. ¶ 13, 23, 24. Construing Plaintiff's statements in paragraphs 23 to 27 of her complaint in the light most favorable to her, *see Dacosta v. United States*, 82 Fed.Cl. 549, 554 (2008); *Taylor v. United States*, 73 Fed.Cl. 532, 541 (2006), the court interprets this language as articulating a Fifth Amendment takings claim with respect to the property described. The government does not challenge such an interpretation. *See* Def.'s Suppl. Br. 2–3 (noting that unlawful retention claim "might be viewed as a claim for [a] taking pursuant to the Fifth Amendment.").

■ The Court of Federal Claims has exclusive jurisdiction over takings claims against the United States in excess of $10,000. *See* 28 U.S.C. § 1491; *Preseault v. Interstate Commerce Comm'n*, 494 U.S. 1, 11, 110 S.Ct. 914, 108 L.Ed.2d 1 (1990) ("taking claims against the Federal Government are premature until the property owner has availed itself of the process provided by the Tucker Act." (quoting *Williamson County Reg'l Planning Comm'n v. Hamilton Bank*

*of Johnson City,* 473 U.S. 172, 195, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985))); *Acceptance Ins. Cos. v. United States,* 503 F.3d 1328, 1336 (Fed.Cir.2007); *Morris v. United States,* 392 F.3d 1372, 1375 (Fed.Cir.2004).

 Once jurisdiction has been established, "[a] claimant alleging a Fifth Amendment takings claim ... 'must show that the United States, by some specific action, took a private property interest for public use without just compensation.'" *Husband,* 90 Fed. Cl. at 35 (quoting *Short v. United States,* 50 F.3d 994, 1000 (Fed.Cir.1995)). The Federal Circuit has articulated a two-part test to determine whether a claim constitutes a taking. First, "as a threshold matter, the court must determine whether the claimant has established a property interest for purposes of the Fifth Amendment"; failure to identify such a "legally cognizable property interest" precludes a finding that a taking has occurred. *Am. Pelagic Fishing Co. v. United States,* 379 F.3d 1363, 1372 (Fed.Cir.2004). "Second, after having identified a valid property interest, the court must determine whether the governmental action at issue amounted to a compensable taking of that property interest." *Id.* For a taking to be compensable under this test, "the Government's action must deprive an owner permanently of property." *Husband,* 90 Fed.Cl. at 36 (citing *Kessler v. United States,* 229 Ct.Cl. 472, 472 (1981)). Finally, "the private property at issue must be taken by lawful government action and for a public use." *Id.* (citing *Adams v. United States,* 391 F.3d 1212, 1218 (Fed.Cir.2004)).

Plaintiff's "unlawful retention" claim warrants dismissal for lack of subject matter jurisdiction, because it was filed too late—both as to the cashier's check and to the business documents. In the alternative, it warrants dismissal for failure to state a claim on which relief may be granted. The latter ground for dismissal will be addressed first because the analysis is the same as to both components of Plaintiff's takings claim.

### 1. Failure to State a Claim

In its motion to dismiss, Defendant argues that Plaintiff's takings claim falls outside the six-year statute of limitations period for actions in the Court of Federal Claims and thus raises a RCFC 12(b)(1) defense of lack of subject-matter jurisdiction. Def.'s Mot. to Dismiss 7–12. Only in its supplemental brief did Defendant suggest the additional defense, under RCFC 12(b)(6), of failure to state a claim upon which relief can be granted. The government's position is that Plaintiff does not allege a taking for public use, a necessary element of a takings claim against the government.

The government points out, quite accurately, that Plaintiff's claim—whether on her own behalf or on behalf of her father, to whom the cashier's check was made payable—rests on the argument that the government seized business documents, including the check and then delayed inordinately in returning the materials to Mr. Ordonez or to his designated agent. One consequence alleged is that the dilatory return of the check rendered it uncollectible. Compl. 12; Pl.'s Suppl. Br. 6.

 Unfortunately for Plaintiff, there is no allegation, nor indeed is there any plausible allegation that could be made, that the government's seizure of the documents in connection with the criminal arrest was a taking of private property *for a public use.* "'[I]tems properly seized by the government under its police power are not seized for 'public use' within the meaning of the Fifth Amendment.'" *Acadia Tech., Inc. v. United States,* 458 F.3d 1327, 1332 (Fed.Cir.2006) (quoting *Seay v. United States,* 61 Fed.Cl. 32, 35 (2004)). In *Acadia,* the Federal Circuit further rejected a takings claim "predicated on the unlawfulness of the delay" in returning property stemming from such a seizure. *Id.* at 1333. The *Acadia* court observed that the remedy for the "right not to have property held ... for an unreasonable time" is either the due process right to have the government return the property or to have it initiate forfeiture proceedings without unreasonable delay. *Id.* In any event, "[a] violation of due process rights, however, does not give rise to a claim for money damages against the United States in the Court of Federal Claims." *Id.* at 1334.[5]

**5.** In its *Acadia* decision, the Federal Circuit brief-

ly alluded to the unfortunate posture of a plain-

■ In its supplemental brief, Defendant notes that "where a complaint asserts a takings claim based upon the seizure of property pursuant to the Government's police powers, the complaint should be dismissed for failure to state a claim." Although it did not formally propose amending its motion to dismiss to assert the RCFC 12(b)(6) defense, *see* Def.'s Suppl. Br. 4, the Federal Circuit has also recognized that, under limited circumstances, a trial court may *sua sponte* dismiss a cause of action for failure to state a claim. In *Constant v. United States*, 929 F.2d 654 (Fed.Cir.1991), the court held that due process is not violated "by a dismissal, even *sua sponte*, for failure to state a claim" where "no additional proceedings could have enabled [plaintiff] to prove any set of facts entitling him to prevail on his claim for relief." *Id.* at 657. Plaintiff here makes no claim that the government's delay in returning the cashier's check or other business documents was because it sought to use them for any public purpose other than the criminal arrest of Mr. Ordonez. Accordingly, Plaintiff's takings claim is hereby DISMISSED for failure to state a claim on which relief may be granted.

## 2. Failure of Jurisdiction due to Statute of Limitations

This court, moreover, lacks subject matter jurisdiction because Plaintiff's takings claim was filed after expiration of the statute of limitations. Under 28 U.S.C. § 2501 (2006), "[e]very claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues."

■ This statute of limitations is "jurisdictional" and "absolute," such that failure to commence a suit within the limitations period deprives the court of the subject-matter jurisdiction to entertain the claim. *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 133–34, 128 S.Ct. 750, 169 L.Ed.2d 591 (2008); *see also United States v. Mottaz*, 476 U.S. 834, 841, 106 S.Ct. 2224, 90 L.Ed.2d 841 (1986) (statute of limitations constitutes a condition upon the government's waiver of sovereign immunity and the terms of that waiver "define the extent of the court's jurisdiction"). The limitations period, therefore, is strictly construed, cannot be waived, and is not susceptible to equitable tolling. *See John R. Sand & Gravel Co.*, 552 U.S. at 136, 128 S.Ct. 750; *Young v. United States*, 529 F.3d 1380, 1384 (Fed.Cir.2008) (Tucker Act statute of limitations "is jurisdictional and not susceptible to equitable tolling"); *Hutchens v. U.S.*, 89 Fed.Cl. 553, 561 (2009) (limitations period is to be rigidly applied and cannot be waived). This limitations period is not simply a "technicalit[y]," but rather has "long been respected as fundamental to a well-ordered judicial system." *Board of Regents v. Tomanio*, 446 U.S. 478, 487, 100 S.Ct. 1790, 64 L.Ed.2d 440 (1980).

■ The statute of limitations begins to run from the date the plaintiff's claim or cause of action "accrues." 28 U.S.C. § 2501; *see also Hair v. United States*, 350 F.3d 1253, 1260 (Fed.Cir.2003) (quoting 1 Calvin W. Corman, *Limitation of Actions* § 6.1 (1991)). A claim accrues "when the plaintiff has a complete and present cause of action," *Hair*, 350 F.3d at 1260, or, put differently, when "all the events have occurred that fix the alleged liability of the Government and entitle the claimant to institute an action." *Ingrum v. United States*, 560 F.3d 1311, 1314 (Fed.Cir.2009); *see also Martinez v. United States*, 333 F.3d 1295, 1303 (Fed.Cir.2003) (en banc). In the context of a takings claim, a cause of action accrues "when the act that constitutes the taking occurs." *Ingrum*, 560 F.3d at 1314 (citing *Alliance of Descendants*

---

tiff, precluded from a takings action because his property was not taken for public use, but otherwise with "no remedy against governmental abuse in holding seized property indefinitely without either filing a judicial forfeiture action against the property or returning it to its owner." 458 F.3d at 1333. In a footnote, the court noted a potential cause of action under the Tucker Act, i.e., bringing suit "under a theory of breach of an implied-in-fact contract of bailment" between the

property owner and the Governmental entity that held the property in question. *Id.* at 1334 n. 2 (citing *Kosak v. United States*, 465 U.S. 848, 860 n. 22, 104 S.Ct. 1519, 79 L.Ed.2d 860 (1984)).

Whether as a takings claim or to the extent that the Court here could generously construe Plaintiff's "unlawful retention" claim as breach of an implied-in-fact contract of bailment, Plaintiff's claim still fails because it has been made too late.

of Tex. Land Grants v. United States, 37 F.3d 1478, 1481 (Fed.Cir.1994)); see also Nw. La. Fish & Game Preserve Comm'n v. United States, 446 F.3d 1285, 1289, 1291 (Fed.Cir. 2006) (a taking has occurred "when governmental action deprives the owner of all or most of its property interest" and the nature and extent of the harm is clear); Petro-Hunt, L.L.C. v. United States, 90 Fed.Cl. 51, 59 (2009) ("a taking generally occurs when the government deprives an owner of the use and enjoyment of his or her property.").

### a. Cashier's Check Payable to Ricardo Arbelaez

Antecedent to the question of the accrual of the cause of action is the matter of Plaintiff's standing to pursue a claim over the cashier's check.

The 123,516 DM check drawn from the Deutsch–Sudamerikanische Bank was payable to Ricardo Arbelaez, an individual whom she identifies as her father.[6] Compl. 1, ¶ 12. In the court's order for supplemental briefing, the court asked Plaintiff to clarify whether she was suing on her own behalf or on behalf of her father and to address her standing to sue in either capacity. In response, Plaintiff advised that she was suing "as a third-party Plaintiff on behalf of her father, Ricardo Arbelaez, and as a Direct Adversly [sic] affected third party for the prolonged retention and destruction of documental material involved in the Government's return of property belonging to Alejandro Ordonez." Pl.'s Suppl. Br. 2 (emphasis added). In this respect, she specifically referenced the cashier's check. She further averred that she was a "trust beneficiary" in the management of "trust funds account" for Highland Coffee Corporation and thus had standing to assert claims "for alleged destruction and loss created by the Government's delay in returning the Cashier's Check." Id. at 3.

The court finds, however, that Ms. Arbelaez lacks standing herself to pursue a claim for the cashier's check because, just as the district court found with respect to her husband in his still-pending civil suit (Ordonez v. United States, No. 07–3751, docket no. 40; A87–98), she also fails to demonstrate any ownership interest herself in that item.

As an initial matter, Plaintiff's assertion that she is suing over "property belonging to Alejandro Ordonez" is inconsistent with her concurrent claim of standing to sue for the cashier's check on her own behalf or on behalf of her father (although it is entirely consistent with the claim of ownership asserted by Mr. Ordonez in his own suit, which is pending appeal in the 9th Circuit). In addition, Ms. Arbelaez nowhere asserts that the check belonged to her, but only that she was a "trust beneficiary" of funds intended for the benefit of the corporation of which she was an officer. There is thus no basis at all for her to assert a personal claim to the cashier's check. Nevertheless, RCFC 83.1(a)(3) provides that "an individual who is not an attorney may represent oneself or a member of one's immediate family . . . in any proceeding before this court." The government concedes this point, acknowledging that Ms. Arbelaez "would be able to act on [her father's] behalf in an action before this Court." Def.'s Suppl. Br. 6.

With respect to the accrual of Mr. Arbelaez's cause of action, the parties agree that the cashier's check at issue was physically taken on January 15, 1993, when Mr. Ordonez's briefcase, which held the check, was seized by FBI agents in connection with Mr. Ordonez's arrest. Compl. 5; A56, 88. Under the so-called accrual suspension rule, however, the § 2501 statute of limitations may be suspended "until the claimant knew or should have known that the claim existed." Martinez v. United States, 333 F.3d 1295, 1319 (Fed.Cir.2003); see also Goodrich v. United States, 434 F.3d 1329, 1333 (Fed.Cir.

---

6. In her complaint, Ms. Arbelaez refers to her father by two names, both "Ricardo Arbelaez" and "Ricardo Arbelaez Isaza." Compare Compl. ¶ 12, with A2. The Government contends, as a result, that "facially it is not clear that [Ms. Arbelaez's] father, 'Ricardo Arbelaez Isaza[,]' is the same person as the individual named on the certified check, 'Ricardo Arbelaez.'" Def.'s Suppl. Br. 6. Given the lenient pleading standards generally accorded to pro se plaintiffs, see supra Part II.A, this court will assume that these references are to the same individual, and proceed under the assumption that the cashier's check is payable to Ms. Arbelaez's father.

2006); *Alliance of Descendants of Tex. Land Grants*, 37 F.3d at 1482; *Catawba Indian Tribe of S.C. v. United States*, 982 F.2d 1564, 1571–72 (Fed.Cir.1993).

 The accrual suspension rule, nonetheless, is "strictly and narrowly applied," and Mr. Arbelaez "must either show that [the] defendant has concealed its acts with the result that [he] was unaware of their existence or . . . that [his] injury was 'inherently unknowable' at the accrual date." *Martinez*, 333 F.3d at 1319 (quoting *Welcker v. United States*, 752 F.2d 1577, 1580 (Fed. Cir.1985)). A claim is inherently unknowable, in the meaning of the rule, "when there is nothing to alert [the claimant] to the wrong at the time it occurs." *Petro–Hunt*, 90 Fed.Cl. at 61; *see also Ingrum*, 560 F.3d at 1315 (where government acts are "open and notorious," the claimant is "on inquiry that it had a possible claim, thus triggering the limitations period."); *Tex. Nat. Bank v. United States*, 86 Fed.Cl. 403, 414 (2009) (" 'inherently unknowable' has been construed to mean that the factual basis for the claim is 'incapable of detection by the wronged party through the exercise of reasonable diligence.' " (quoting *Ramirez–Carlo v. United States*, 496 F.3d 41, 47 (1st Cir. 2007))). Mere ignorance of rights or a claim which should be known is insufficient for the purposes of the rule. *United States v. Kubrick*, 444 U.S. 111, 122, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979); *Japanese War Notes Claimants Ass'n of Phils. v. United States*, 178 Ct.Cl. 630, 373 F.2d 356, 358–59 (1967). Finally, the plaintiff bears the burden of demonstrating that a claim was filed within the statutory period. *See Alder Terrace, Inc. v. United States*, 161 F.3d 1372, 1377 (Fed. Cir.1998).

For the present suit—initiated on August 3, 2009—to have been filed in a timely manner in accordance with § 2501, Mr. Arbelaez must demonstrate that his cause of action did not accrue at any point prior to August 3, 2003. That is to say, he must allege that he did not know and could not have known, because it was inherently unknowable, that the government had taken his property interest in the check through that date; if Mr. Arbelaez had or should have had knowledge of the claim prior to that date, then his claim is not timely, because any time prior to that date falls more than six years prior to the filing of the instant suit.

 Even giving a liberal construction to the complaint, there is no basis to invoke the accrual suspension rule. First, the complaint does not allege that the government somehow concealed the fact that it had seized and retained the check, thereby preventing Mr. Arbelaez from learning the facts that should have prompted him to bring suit earlier. To the contrary, the check was the subject of litigation between Mr. Ordonez and the government as far back as 1997, several years prior to the expiration of the statutory limit. *See United States v. Ordonez*, No. 97–1979 (C.D.Cal.1997). In that litigation, in which Mr. Ordonez claimed the check as his property, the government acknowledged holding the check. *See* A106. It also itemized it in court documents. *See* A169–173. That Ms. Arbelaez, his daughter, was also aware of the government's seizure of property in Mr. Ordonez's possession at the time of the 1997 suit, *see* A137 (affidavit filed by Ms. Arbelaez and her son Francisco Ordonez averring that "neither one of us have ever received any of Alejandro Ordonez's property"), suggests that by reasonable diligence Mr. Arbelaez, too, could have discovered through her that the government held it.

 Moreover, Ms. Arbelaez asserts in her affidavit in this suit, A2, that the proceeds of the cashier's check were "to pay for green beans and final coffee products delivered to Mexitrade on January 1993." In light of the purpose of the check proceeds (and that lacking those funds, the beans and coffee were not delivered in the period concurrent with Mr. Ordonez's arrest), the amount of money at stake (the equivalent of $175,000 as of January 1993, according to Plaintiff; Compl. 13), and the fact that the check was dated December 23, 1992, it seems that any reasonable payee of the check would have been on notice, at least by the time of Mr. Ordonez's "Motion to Return Property" in 1997, to have inquired on his own of the check's whereabouts. It was anything but "inherently unknowable." Mr. Arbelaez's injury—the inability to access the proceeds of

the check—began when the government seized the check from Mr. Ordonez in 1993 and his cause of action was clearly knowable at that point or within a few months thereafter.

The six-year limitations period permitted under 28 U.S.C. § 2501, within which Mr. Arbelaez could have filed a timely suit to recover his check, provided him with ample opportunity to assert his rights; he failed to do so. Accordingly, the court finds that any cause of action that he might have had with respect to the government's seizure of the cashier's check accrued in, or soon after, January 1993. Since this suit was not commenced until August 2009, it falls outside the six-year limitations period under § 2501, thereby depriving this court of the subject matter jurisdiction to entertain the claim. With respect to a claim of "unlawful retention" of the cashier's check, the government's motion to dismiss is GRANTED for lack of jurisdiction.

### b. Business Documents

■ To the extent that Ms. Arbelaez articulates an unlawful retention claim on her own behalf for the Highland Coffee business documents and contracts seized by the FBI at the time of Alejandro Ordonez's arrest, that claim is also filed too late.[7]

The business documents that are the subject of this takings claim were seized, along with the cashier's check and other items in Mr. Ordonez's possession, on January 15, 1993, when the FBI arrested him. Compl. ¶ 14. The six-year Tucker Act statute of limitations expired on these claims as of January 15, 1999. See 28 U.S.C. § 2501. Ms. Arbelaez does not allege facts sufficient to invoke the accrual suspension rule and her claim is thus time-barred. Accordingly, with respect to the second component of her "unlawful retention" claims, the court lacks the subject matter jurisdiction to entertain this claim. The government's motion to dismiss is GRANTED.

### C. Breach of Duty

The final claim articulated by Ms. Arbelaez is for "breach of duty," which she alternatively refers to as a claim for "breach of contract." Compl. 11. Ms. Arbelaez's breach of contract claims also fails for lack of jurisdiction because: 1) her claim is time-barred under 28 U.S.C. § 2501; and 2) she has not sustained her burden of proving that she was an intended, direct third-party beneficiary of that putative contract.

The alleged contract arises from an August 7, 1997, letter ("the 1997 letter") from U.S. Attorney Nora M. Manella and Assistant U.S. Attorney Julien A. Adams to Mr. Ordonez, which states that "the government is in possession of your property" and offers to return that property to an individual whom he specifies. A35. Mr. Ordonez apparently did not respond to this request and did not at that time designate an individual to receive the property in question. See A170 (Declaration of George Q. Fong stating, "I do not recall ever receiving information concerning any individual designated by Mr. Ordonez to receive those items"). Nevertheless, Ms. Arbelaez asserts that "[b]y the August 7, 1997's letter offered [sic] to return Plaintiff's property, a government' [sic] compromise was acquired." Compl. 11, ¶ 39. By failing to return the property, Plaintiff argues, "[t]he Government is in default and Breach of Contract exists against the Plaintiff and third-party in privity interest." Id at 12, ¶ 41.

Ms. Arbelaez appears to be asserting a claim to recover as a third-party beneficiary of a contract allegedly created by the August 7, 1997, letter and breached when the government failed to return the property in question to an agent of Mr. Ordonez's designation (although such a recipient was not designated until 2007). Even if this court were to determine, however, that the 1997 letter constituted a valid contract and that Ms. Arbelaez could be considered an intended, direct third-party beneficiary of that contract, her claims would still be barred under the Tucker Act's six-year statute of limitations.

---

7. She also appears to lack standing, because, as Defendant notes, "Ms. Arbelaez fails to contend that she has any personal property interest in any

of the items seized during Mr. Ordonez's arrest." Def.'s Suppl. Br. at 4.

Her complaint before this court was filed on August 3, 2009. If her cause of action for breach of contract accrued any earlier than August 3, 2003, that is, no earlier than the allowed six years, then she is out of time. Under the 1997 letter "contract," she avers that she was supposed to be the recipient of the business documents and papers, etc., which the government promised to return. The breach of that "promise," however, would have been manifest even before the close of calendar year 1997 and she would have been obliged to have filed her instant lawsuit well before she actually did so. Thus, the court lacks jurisdiction due to the statute of limitations.

In addition, even liberally construing the 1997 letter as a contract, which is doubtful, it is also clear to the court that Ms. Arbelaez has failed to establish that she was an intended, direct beneficiary. To qualify for third-party beneficiary status, a plaintiff must prove that the contract reflects an express or implied intention to benefit that party and further that the intent of the principal parties is to benefit that third-party directly. *See Flexfab, L.L.C. v. United States,* 424 F.3d 1254, 1259 (Fed.Cir.2005); *Chancellor Manor v. United States,* 331 F.3d 891, 901 (Fed.Cir.2003); *Roedler v. Dep't of Energy,* 255 F.3d 1347, 1352 (Fed.Cir.2001). Accordingly, "[t]he intent of the parties to the contract is . . . the cornerstone of a claim for third-party beneficiary status." *Flexfab,* 424 F.3d at 1259; *see also Sallee v. United States,* 41 Fed.Cl. 509, 514 (1998) (holding that "[i]n order for plaintiff to have a viable third-party beneficiary claim, he must demonstrate that he is an intended third-party beneficiary, as evidenced by the intent or words of the . . . contract").

The Supreme Court has held that third-party beneficiary status constitutes an "exceptional privilege." *German Alliance Ins. Co. v. Home Water Supply Co.,* 226 U.S. 220, 230, 33 S.Ct. 32, 57 L.Ed. 195 (1912); *see also Flexfab,* 424 F.3d at 1259 ("proof of the requisite intent is no small matter."); *Nelson Constr. Co. v. United States,* 79 Fed.Cl. 81, 96 (2007) (third-party status "must not be granted liberally"). While the beneficiary "need not be specifically or individually iden-

tified in the contract," the party "must fall within a class clearly intended to be benefited thereby." *Montana v. United States,* 124 F.3d 1269, 1273 (Fed.Cir.1997). The party invoking the court's jurisdiction, here Ms. Arbelaez, has the burden of proving the elements necessary to establish that jurisdiction. *Reynolds,* 846 F.2d at 748; *Ahlborg v. U.S.,* 74 Fed.Cl. 178, 188 (2006).

She fails to meet the burden of proof incumbent on her. Other than the short paragraphs of the Complaint noted above, as well as a conclusory recitation that "[w]ith the return of the cashier's check on September 27, 2007, the third-party beneficiary status appears," Compl. 12, ¶ 42, Ms. Arbelaez merely alleges her third-party status but presents no case in support. There is no evidence advanced that the U.S. Attorneys and Mr. Ordonez specifically intended to return the property to Ms. Arbelaez or to benefit Ms. Arbelaez personally, as distinct from Highland Coffee corporation or others, when they agreed on the return of the various items of seized possessions. Mr. Ordonez was even asked to identify a recipient for the returned property, suggesting there was no one otherwise specifically intended. In light of this complete dearth of evidence proffered in support of her claim, Ms. Arbelaez cannot properly be considered a third-party beneficiary of the alleged contract created by the 1997 letter.

Because her cause of action for breach almost certainly accrued prior to August 3, 2003—and Ms. Arbelaez has presented no facts that would enable the court to determine otherwise—her claim is time-barred under § 2501. The court also lacks subject matter jurisdiction because she has not demonstrated the existence of a contract of which she is an intended third-party beneficiary. Accordingly, the government's motion to dismiss Plaintiff's claim of breach of contract is GRANTED.

## IV. CONCLUSION

In light of the foregoing, the court holds that it lacks subject matter jurisdiction over

all of Plaintiff's claims.[8] Plaintiff's takings claims are also dismissed for failure to state a claim on which relief may be granted. Therefore, the court GRANTS Defendant's Motion to Dismiss and directs the Clerk of the Court to dismiss this case.

---

8. In light of the Court's dismissal for tack of jurisdiction on the basis of the statute of limitations, it is unnecessary to address Defendant's joinder and related § 1500 jurisdictional arguments.